**SAS & ASSOCIATES, INC., Appellant,**

v.

**HOME MARKETING SERVICING, INC., Appellee.**

No. 05–04–01297–CV.

Court of Appeals of Texas, Dallas.

July 6, 2005.

Rehearing Overruled Aug. 10, 2005.

Perry J. Cockerell, Randall K. Price, Cantey & Hanger, Dallas, for Appellant.

James W. Winblood, R. Scott Anderson, Law Office of Anderson & Jones, PLLC, and Harold Dean Jones, Dodge, Anderson, Jones, Bezney & Gillman, P.C., Dallas, for Appellee.

Before Justices WHITTINGTON, MOSELEY, and LANG–MIERS.

**OPINION**

Opinion by Justice WHITTINGTON.

SAS & Associates, Inc. was the landlord and Home Marketing Servicing, Inc. the tenant under a commercial office lease. The parties' dispute relating to the lease was tried to a jury, and the trial judge entered judgement for HMS. Both parties appeal. SAS raises eight issues; HMS complains only of the trial judge's suggestion of remittitur of the exemplary damages award. We affirm the trial court's judgment.

STANDARDS OF REVIEW

SAS challenges the legal and factual sufficiency of the evidence and complains the trial judge erred in failing to grant its motion for judgment notwithstanding the verdict. The Texas Supreme Court recently analyzed in detail the standards of no-evidence review (including legal sufficiency and motions for judgment notwithstanding the verdict) in *City of Keller v. Wilson,* 168 S.W.3d 802, No. 02–1012,

2005 WL 1366509 (Tex., June 10, 2005). In conducting a no-evidence review, "appellate courts must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller,* at 807, 2005 WL 1366509, at *1. In conducting a factual sufficiency review, we consider all the evidence, *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989), and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986)(per curiam).

## Expert Witness

In its first issue, SAS argues its motion for judgment notwithstanding the verdict should have been granted because the testimony of Denis Burns, HMS's expert witness, was not reliable and was not supported by any evidence. Citing *Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245 (Tex.2004), SAS argues Burns's testimony is "no evidence" because "there is too great an analytical gap between the data and the expert's conclusions." SAS does not challenge Burns's qualifications. SAS first contends Burns's testimony "was not supported by generally accepted accounting principles," but does not point to any particular principle Burns ignored or violated. SAS cites to a portion of Burns's testimony where Burns testifies SAS "in large part" followed generally accepted accounting principles "in creating the bills for the [common area maintenance] expenses that went to [HMS]." This is not evidence Burns violated or ignored any principles himself in reviewing SAS's charges.

■ The remainder of SAS's complaints about Burns's testimony relate to specific calculations Burns made. Burns reviewed SAS's records and the lease, and criticized specific charges made by SAS to HMS. SAS's expert, Steve Townes, reviewed each of Burns's criticisms and gave his own opinions whether Burns's analysis was correct or incorrect. Both experts took a similar approach of reviewing specific expenditures and offering an opinion, based on their expertise, on the proper accounting treatment for the expenditures under the lease. That Burns in Townes's view made errors in accounting treatment or in his calculations did not create an impermissible "analytical gap" between the data and Burns's conclusions. *See Kerr–McGee,* 133 S.W.3d at 254 (in reviewing reliability of expert testimony, court not to determine whether expert's conclusions are correct, but only whether analysis used to reach conclusions is reliable). These alleged errors were a proper subject for SAS's cross-examination of Burns and for Townes's own opinions. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 728 (Tex.1998) (trial court's gatekeeping function does not supplant cross-examination as traditional and appropriate means of attacking shaky but admissible evidence). The jury was then free to accept or reject either expert's judgments and inferences. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986) (judgments and inferences of experts not conclusive on jury or trier of fact). We overrule SAS's first issue.

In its eighth issue, SAS urges the trial judge erred in not entering judgment for it because it was the "prevailing party" under the lease if we accept its argument on its first issue. Because we overrule SAS's first issue, we also overrule its eighth issue.

## Overcharge and Offset

■ HMS's breach of contract claims are based upon alleged overcharges for

"common area maintenance" expenses under the lease. In its second and sixth issues, SAS complains there was no evidence of any overcharge for common area maintenance under the lease, and avers the trial judge erred in denying its motion for judgment notwithstanding the verdict on this issue. In support of its argument, SAS argues it gave HMS a credit in 2003 for the overcharges Townes found to have occurred for the years 2000 and 2001. SAS further argues amounts paid by HMS into the registry of the court to cover estimated common area maintenance charges for 2002 and 2003 should have been used to offset the damages found by the jury for 2001.

Before trial, the trial judge limited the years in dispute between the parties to 2000 and 2001. The trial judge informed the jury of this limitation during the direct examination of Burns upon request by SAS's counsel. The charge inquired about damages for overcharges in common area maintenance for two specific years, 2001 and 2002 (the submission of 2002 overcharges was apparently an error). The jury found damages for breach of the lease for the year 2001 of $4,653.00, and zero for 2002.[1]

As noted above, SAS's expert Townes agreed with some of Burns' conclusions about common area maintenance charges made that were not allowable under the lease. Townes recommended adjustments based on those conclusions. Thus, SAS argues because the parties undertook an audit under the lease, and in 2003 SAS credited the amounts Townes and Burns agreed were overcharges for 2000 and 2001, there was no evidence of breach of the lease. We disagree. Townes and Burns agreed to a certain level of over-charges, and Burns also testified to additional overcharges upon which Townes disagreed. The jury could have found HMS was overcharged for common area maintenance in 2000 and 2001, and could have found the overcharges constituted a breach of the lease. SAS cites no authority for the proposition that making the credit in 2003 renders the evidence of 2000 and 2001 overcharges irrelevant or not probative of HMS's breach of contract claim.

■ SAS further argues it was actually the prevailing party in the lawsuit when the actual damages found by the jury for breach of contract are offset against the amounts HMS paid into the registry of the court. The amounts paid by HMS, however, were not amounts for which HMS was determined to be liable by the jury; they were for years not in issue in the lawsuit. Moreover, the right of offset is an affirmative defense. The burden of pleading offset and of proving facts necessary to support it are on the party making the assertion. *See Matrix, Inc. v. Provident American Ins. Co.*, 658 S.W.2d 665, 667 (Tex.App.-Dallas 1983, no writ); *see also* TEX.R. CIV. P. 94. SAS filed an answer, supplemental answer, and counterclaim for its attorneys' fees, and sought to make a trial amendment to recover the 2002 and 2003 common area maintenance charges. SAS did not, however, plead offset as an affirmative defense, and has not appealed the trial judge's denial of its request for trial amendment to recover 2002 and 2003 common area maintenance charges.

We overrule SAS's second and sixth issues.

### FRAUD

■ The jury found SAS committed fraud and awarded damages of $7,574 on

---

1. The jury sent a note during deliberations asking the judge about the year 2002, noting "accountant did not do '02'."

HMS's fraud claim. SAS challenges the sufficiency of the evidence to support these findings, asserting in its third issue the trial judge erred in denying its motion for judgment notwithstanding the jury's verdict on HMS's fraud claim. SAS asserts that for HMS's claim it was fraudulently induced to enter into the lease, HMS was required to prove SAS had no intention of performing its obligations under the lease at the time the contract was made, citing *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47–8 (Tex.1998). Because there was no such evidence, SAS argues, HMS's fraud claim should fail as a matter of law.

We disagree. The jury was also instructed regarding a failure to disclose material facts. HMS presented evidence SAS knew of roof leaks, lack of hot water, "bug infestations," and "power problems," but failed to disclose these problems and instead represented to HMS the leased premises were "a great space." This is some evidence which, if believed by the jury, could support HMS's allegation of fraud. *See Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 476–77 (Tex.App.-Fort Worth 2004, no pet.) (misrepresentation may consist of concealment or nondisclosure of material fact when there is duty to disclose; when party voluntarily discloses information, must disclose whole truth; duty to disclose also arises when party makes partial disclosure and conveys false impression).

■ SAS also contends Robert Lovell, President of HMS, was not designated as an expert to testify to the damages suffered by HMS as a result of SAS's fraud. At trial, SAS objected to Lovell's testimony regarding the value of items of personal property damaged by the water leaks and other problems with the leased space on the ground that Lovell had not been designated as an expert witness. The trial judge overruled the objection. Citing *Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 206 (Tex.App.-Dallas 2003, pet. dism'd), SAS also argues Lovell's testimony was improper because HMS did not establish Lovell had knowledge, skill, experience, training, or education in determining the value of personal property or the cost to repair it.

We noted in *Anthony Equipment Corp.* that a lay witness with personal knowledge on which to base his testimony may be qualified to testify regarding cost of repair. *See Anthony Equip. Corp.*, 115 S.W.3d at 206–7 (comparing *Coker v. Burghardt*, 833 S.W.2d 306, 310–11 (Tex.App.-Dallas 1992, writ denied), in which car owner could give opinion on reasonable cost of repairs after familiarizing himself with cost of repairs by visiting area car repair shops). Here, Lovell testified he is the sole shareholder, director, and officer of HMS. Lovell testified he originally purchased the items that were damaged and recalled what he paid for them. He also testified he analyzed whether he should replace the damaged items or repair them, by investigating the costs, obtaining bids, and finally determining to donate the items to charity. At trial, SAS objected only on the ground that Lovell was not a properly-designated and qualified expert; SAS did not object to Lovell's lack of personal knowledge to testify as a lay witness. *See Bower v. Processor & Chem. Serv., Inc.*, 672 S.W.2d 30, 32 (Tex.App.-Houston [14th Dist.] 1984, no writ) (sole shareholder and president of closely-held corporation could testify as to value of van owned by corporation). We overrule SAS's third issue.

In its fifth issue, SAS argues the trial judge erred in not setting aside the jury's award of punitive damages because without a valid underlying claim for fraud, punitive damages are not available. Because we hold there was some evidence to

support the jury's findings on HMS's fraud claim, we overrule SAS's fifth issue. We discuss the amount of the jury's punitive damages award below.

### ELECTION BETWEEN CONTRACT AND FRAUD CLAIMS

▮ In its fourth issue, SAS contends the trial court erred in denying its motion for judgment notwithstanding the verdict because HMS was required to make an election between its fraud claim and its breach of contract claim. SAS contends the damages awarded by the jury on the fraud claim, $7,574, were actually breach of contract damages for common area maintenance overcharges. SAS points to Burns's testimony that the common area maintenance overcharges for 2000 were $2,921, and for 2001 were $4,653, for a total of $7,574. Thus, SAS argues, because the jury awarded $4,653 for breach of contract damages, the $7,574 in fraud damages awarded by the jury constitutes a double recovery of the $4,653.

▮ The amount of fraud damages awarded by the jury, however, is within the range of the evidence offered at trial. Lovell testified to fraud damages of $11,700. The jury has discretion to award damages within the range of evidence presented at trial. *See City of Houston v. Harris County Outdoor Advertising Ass'n,* 879 S.W.2d 322, 334 (Tex.App.-Houston [14th Dist.] 1994, writ denied). We are not permitted to disregard the jury's damages award on the basis that the jury's reasoning is unclear. *See Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 710 (Tex.App.-Houston [1st Dist.] 1988, writ denied). HMS could recover for both breach of contract and fraudulent inducement of the contract. *See Yeldell v. Goren,* 80 S.W.3d 634, 637 (Tex.App.-Dallas 2002, no pet.) (tort damages recoverable for fraudulent inducement claim irrespective of whether fraudulent representations are later subsumed in contract or whether plaintiff only suffers economic loss related to subject matter of contract).

▮ In its reply brief, SAS argues we cannot conclude the $7,574 is within the range of Lovell's testimony of $11,700 in fraud damages, because the $11,700 was for damage to personal property, and the jury explicitly found zero damages in its answer to question number 2(b) for "loss of value of property damaged" as a result of SAS's failure to comply with the lease. We cannot assume the jury's answers conflict if they can be reconciled. *See Huber v. Ryan,* 627 S.W.2d 145, 145–46 (Tex. 1981) (never presumed jurors intend to return conflicting answers; presumption is always to contrary; courts properly refuse to strike down answers on ground of conflict if any reasonable basis upon which they may be reconciled); *see also Huber,* 627 S.W.2d at 145–46 (court under duty to reconcile conflicting jury findings if at all possible). We overrule SAS's fourth issue.

### ATTORNEYS' FEES

▮ In its seventh issue SAS claims the trial judge erred in not ordering a remittitur of HMS's attorneys' fees. SAS argues that because HMS prevailed on only two of thirteen jury questions for which attorneys' fees could be awarded, HMS should be able to recover only a similar fraction of its attorneys' fees. HMS responds that it is not necessary to segregate attorneys' fees where breach of contract claims and other claims require "proof or denial of essentially the same facts, so as to render the attorneys' fees inseparable," quoting *Willis v. Donnelly,* 118 S.W.3d 10, 46 (Tex.App.-Houston [14th Dist.] 2003, pet. filed). In its reply, SAS denies it was making an argument for segregation of fees ("[b]ut 'segregation' of the fees is not the issue in this case"),

maintaining instead that the attorneys' fees award was excessive because HMS did not prevail on many of the claims it asserted, and further did not prevail on many claims for which attorneys' fees are recoverable. SAS further argues the fees were excessive because they exceeded the actual damages recovered.

 An attorneys' fees award may be reviewed for excessiveness under a sufficiency of the evidence standard. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex.1991). The determination of reasonable attorneys' fees is a question for the trier of fact. *Sterling*, 822 S.W.2d at 12. As noted in *Sterling*, "[a]lthough courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Sterling*, 822 S.W.2d at 10. We may draw upon our common knowledge as justices of the court and our experience as lawyers and judges. *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex.App.-Houston [1st Dist.] 2004, no pet.). We may consider factors such as the time and labor required, the complexity of the case, the preclusion of other employment by the lawyer, the fee customarily charged in the area for similar legal services, the results obtained, and the experience of the lawyer performing the services, among other factors. *See C.M. Asfahl Agency*, 135 S.W.3d at 801–802 (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997)). The amount of damages awarded is not the sole determining factor. *C.M. Asfahl Agency*, 135 S.W.3d at 803.

Here, the jury awarded HMS $60,000 in attorneys' fees through trial, $12,000 for representation on appeal to the court of appeals, and $5,000 for representation on appeal to the Supreme Court of Texas.

HMS's attorney testified these fees were reasonable and necessary. He submitted an exhibit showing the time he spent taking and defending depositions and obtaining and reviewing records. The exhibit also showed the hours paralegals from his firm spent on the case and the fees charged for those efforts, and the filing fees and other costs incurred on his client's behalf. He testified to his hourly rate, the hours he spent preparing for trial, and his opinion of a reasonable fee for appeals. He testified he had over twenty-five years' experience trying lawsuits. He testified the time he and his paralegals spent on the case was necessary to prosecute HMS's claims as well as defend against SAS's counterclaims, and was appropriate "concerning the issues which are present in this case and the work that is required to be done in this case."

SAS's attorney also testified as to the fees incurred by his own firm for defending the case. He testified his firm's fees were approximately $120,000 for trial, at hourly rates comparable to those charged by HMS's counsel. Neither lawyer testified the case was unusually complex or that it precluded him from accepting other employment. Both lawyers charged similar hourly rates and had comparable experience. HMS prevailed at trial, and HMS's lawyer spent fewer hours at a lower rate than SAS's lawyer. In light of this evidence, we cannot say the evidence that supports the award of attorneys' fees is so weak that the award is clearly wrong and manifestly unjust, or that the evidence offered by HMS fails to show that the jury's award was reasonable and necessary. *See C.M. Asfahl Agency*, 135 S.W.3d at 803. We overrule SAS's seventh issue.

### REMITTITUR

 In its sole issue on cross-appeal, HMS complains of the trial judge's

suggestion of remittitur of a portion of the jury's exemplary damages award. We review a trial court's suggestion of remittitur under the factual sufficiency standard. *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.,* 118 S.W.3d 445, 462 (Tex.App.-Dallas 2003, pet. filed) (verdict should be set aside only if so contrary to overwhelming weight of evidence as to be clearly wrong and unjust; we may not pass upon credibility of witnesses or substitute our judgment for that of trier of fact). A court of appeals should uphold a trial court's remittitur only when the evidence is factually insufficient to support the jury's verdict. *Snoke v. Republic Underwriters Ins. Co.,* 770 S.W.2d 777, 778 (Tex.1989)(standard of review of remittitur is sufficiency of the evidence). A remittitur will not be upheld on appeal unless the appellate court agrees with the trial court's implicit finding that the evidence was insufficient to support the jury's verdict. *See U.S.A. Precision Machining Co. v. Marshall,* 95 S.W.3d 407, 412 (Tex.App.-Houston [1st Dist.] 2002, pet. denied)(remittitur not proper where evidence of attorney's time and hourly rate was sufficient to support jury's award of attorneys' fees, even though award exceeded contingency fee agreement).

The jury awarded $200,000 in exemplary damages. The trial judge suggested a remittitur to $22,722, an amount equal to three times the amount of damages the jury awarded for fraud. She noted in her order that the punitive damages award "is excessive based on the Supreme Court guidelines and is therefore against the great weight and preponderance of the evidence as to be manifestly unjust." HMS argues the jury's award should not be set aside if there is any probative evidence to support it, and further argues the $200,000 was not excessive.

■ The factors set forth in *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981), provide the framework for our review. *See Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994) (when conducting factual sufficiency review of punitive damage award, court of appeals must detail relevant evidence and explain why evidence does or does not support award in light of *Kraus* factors). The *Kraus* factors include: "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of the culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety." *Kraus,* 616 S.W.2d at 910. In sustaining a factual insufficiency challenge, our opinion must detail the relevant evidence and clearly state why the finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). Further, our opinion must state in what regard the contrary evidence greatly outweighs the evidence in support of the finding. *See Foley v. Parlier,* 68 S.W.3d 870, 886 (Tex.App.-Fort Worth 2002, no pet.).

As noted above, and as HMS argued in response to SAS's third issue, HMS's fraud claim was based upon SAS's inducing HMS to enter into the lease while failing to disclose the maintenance problems and representing to HMS the space was "great." HMS summarizes the evidence supporting the jury's award of punitive damages as follows:

> The landlord engaged in a pattern to misrepresent the condition of space to induce a tenant to accept assignment of a lease and preserve the landlord's income stream; repeatedly charged its tenants for personal expenses and capi-

tal expenses, contrary to lease terms, as CAM charges; refused to cooperate in providing information it controlled for an audit, despite lease terms, until the tenant obtained a court order; and manipulated a key witness concerning the maintenance issues at the heart of the fraudulent inducement issues.

We address the evidence in light of the *Kraus* factors. The nature of the wrong was fraudulent inducement to enter into a commercial lease. The character of the conduct involved was the statement of Alan Aguilar, a representative of SAS, that the leased premises was "a great space" when in fact it had maintenance problems of which the landlord knew but did not disclose. Regarding SAS's culpability, HMS argues Aguilar's motivation was financial, to "preserve the landlord's income stream." We do not agree with HMS that SAS's later breaches of contract such as the common area maintenance overcharges and the failure to cooperate with an audit are additional grounds for the award of punitive damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003 (Vernon Supp. 2004–05) (exemplary damages may be awarded only if claimant proves by clear and convincing evidence the harm with respect to which claimant seeks recovery of exemplary damages results from fraud, malice or gross negligence). The parties' situation and sensibilities were similar; two business entities with an existing landlord/tenant relationship entered into an arms' length transaction. Both parties had experience negotiating contracts.

As to the public's sense of justice and propriety, the loss experienced by HMS is financial, and the jury awarded actual damages through which HMS will recover its financial loss. As noted in *Lesikar v. Rappeport,* 33 S.W.3d 282, 315 (Tex.App.-Texarkana 2000, pet. denied), "[u]nlike personal injury cases where monetary damages cannot replace a lost life or restore a maimed body, the actual recovery in this case will make the injured parties completely whole." The size of the jury's punitive damages award against SAS appears to be the result of passion rather than the result of an objective assessment of the evidence. *See Lesikar,* 33 S.W.3d at 315. A significant portion of the jury's time was consumed with evidence relating to witness Jose Mendoza. Mendoza was in charge of maintenance for the leased premises both before and during HMS's occupancy and thus had knowledge of the condition of and the repairs made to the premises. Mendoza apparently suffers from a brain condition. The parties presented evidence, including expert medical testimony, as to whether or not his condition could affect his memory and veracity. HMS presented evidence that during and in preparation for Mendoza's deposition, Aguilar angered Mendoza by questioning his ability to communicate in English, and treated him unfairly after he gave his deposition. While this evidence about the condition of the premises and the repairs made was unquestionably relevant, and the evidence about Mendoza's medical condition could have had bearing on his credibility as a witness, it does not bear one way or the other on the issue of the proper amount of punitive damages. However, it is possible the jury's large award of punitive damages was improperly premised on this evidence.

SAS also challenged the award of punitive damages on federal due process grounds. Even if an assessment of punitive damages is not deemed excessive under governing state law, it may violate a party's substantive due process right to protection from "grossly excessive" punitive damages awards. *See Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 45 (Tex.1998) (citing *BMW of N. Am.,*

*Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). *BMW* establishes three "guideposts" for determining whether a punitive damages award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between actual and punitive damages; and (3) a comparison of the punitive damages awarded and other civil or criminal penalties that could be imposed for similar misconduct. *Malone,* 972 S.W.2d at 45 (citing *BMW,* 517 U.S. at 574–75, 116 S.Ct. 1589).

▮ Under the first guidepost, which the Supreme Court has described as the most important, we should consider whether the harm caused was physical as opposed to economic; the tortious conduct evinced a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, deceit, or mere accident. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). The jury found SAS acted with malice. On the remainder of the *Campbell* factors, however, the harm was economic and did not "evince a reckless disregard of the health or safety of others." *See Campbell,* 538 U.S. at 419, 123 S.Ct. 1513. The evidence did not show HMS was financially vulnerable; HMS was seeking to move into a larger space because its business was growing. The fraudulent misrepresentation and failure to disclose surrounded the transaction of entering into the lease, not repeated conduct.

▮ As to the second factor, the jury awarded damages of $4653 for breach of contract and $7574 for fraud, for a total of $12,227.00. The jury awarded punitive damages of $200,000.00, approximately sixteen times the total. The ratio of actual to punitive damages alone is not determinative of excessiveness. *See, e.g., Bunton v. Bentley,* 153 S.W.3d 50, 54 (Tex.2004) (all three *Gore* factors work together to ensure exemplary damages are reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered; factors cannot be viewed in isolation; ratio must be examined in light of other factors and actual harm to plaintiff). However, as noted by the Supreme Court in *Campbell,* "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *See Campbell,* 538 U.S. at 425, 123 S.Ct. 1513 (noting "a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish"). As to comparable criminal penalties, theft of amounts between $1,500 and $20,000 is a state jail felony, *see* Tex. Pen. Code Ann. § 31.03(e)(4)(A) (Vernon Supp. 2004–05), punishable by confinement in a state jail for not more than two years and not less than 180 days, and a fine not to exceed $10,000. *See* Tex. Pen.Code Ann. § 12.35(a) and (b) (Vernon 2003). After considering the *BMW* and *Campbell* factors and the evidence detailed in the discussion of *Kraus,* we conclude the punitive damages award to HMS is excessive under the due process clause.

Having reviewed all of the evidence, we hold the jury's award of punitive damages was so against the great weight and preponderance of the evidence as to be manifestly unjust. A rational jury could not have found that the nature of the wrong, the character of the conduct, the degree of SAS's culpability, the situation and sensibilities of the parties, and the public's sense of justice and propriety required SAS to pay exemplary damages in the amount awarded. The evidence was factu-

ally insufficient to support the jury's award of $200,000 in punitive damages. *See Gray v. Allen,* 41 S.W.3d 330, 334 (Tex.App.-Fort Worth 2001, no pet.), *citing Kraus,* 616 S.W.2d at 910. We further hold that punitive damages in the amount suggested by the trial judge are not against the great weight and preponderance of the evidence and do not violate due process. *See Cass v. Stephens,* 156 S.W.3d 38, 77 ((Tex.App.-El Paso 2004, pet. filed) (while punitive damages award of twenty-five times actual damages violated due process, award three or four times actual damages was constitutionally permissible)). We hold that the trial court did not err in ordering a remittitur of a portion of HMS's punitive damages award. We overrule HMS's sole issue.

We affirm the trial court's judgment.