**Reverse and Remand and Opinion Filed November 20, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-14-01306-CV
_____

### STATE BANK OF TEXAS, Appellant
### V.
### GRANBURY HOSPITALITY, INC., SEVILLE PLAZA HOSPITALITY, INC., CANYON COUNTRY HOSPITALITY, INC., MOVHA INVESTMENTS, INC., KIRIT BHAKTA, AJIT BHAKTA, ARUN PATEL, NITIN SHAH, AND NALIN PATEL, Appellees

### On Appeal from the 44th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-12-06398

## MEMORANDUM OPINION
Before Justices Bridges, Francis, and Myers
Opinion by Justice Francis

In this deficiency suit, State Bank of Texas appeals the trial court's judgment in favor of appellees. In two issues, the Bank claims the trial court erred by concluding (1) the fair market value of the property should be used in the calculation of a deficiency and (2) the Bank failed to establish the amount due and owing under the promissory note and guaranties. We reverse the trial court's judgment and remand for further proceedings.

Granbury Hospitality, Inc., Seville Plaza Hospitality, Inc., Canyon Country Hospitality, Inc., Movha Investments, Inc., Arun Patel, Nitin Shah, and Nalin Patel financed the purchase of a La Quinta Inn in the Parish of Orleans, Louisiana through the Bank. On September 27, 2007, they signed a promissory note for $4.6 million and executed a mortgage/deed of trust. The

promissory note provided all payments were to be made at the Bank's offices in Irving, Texas and stated:

> THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF TEXAS FROM TIME TO TIME IN EFFECT EXCEPT TO THE EXTENT PREEMPTED BY UNITED STATES FEDERAL LAW.  MAKER REPRESENTS THAT (A) MAKER APPLIED FOR THE LOAN EVIDENCED BY THE NOTE IN DALLAS, TEXAS, (B) ALL NEGOTIATIONS RELATING TO THE LOAN AND THIS NOTE HAVE TAKEN PLACE IN DALLAS, TEXAS, AND (C) THE ONLY CONTACT BETWEEN THIS TRANSACTION AND THE STATE OF LOUISIANA IS THAT THE PROPERTY IS LOCATED IN LOUISIANA.

The mortgage/deed of trust likewise provided the loan documents were governed by and construed in accordance with Texas law "except to the extent that the real and personal property laws of the state of Louisiana, including laws governing foreclosure, shall necessarily govern." Kirit Bhakta, Ajit Bhakta, and Arun Patel each guaranteed the debt jointly and severally, although each guarantor's liability was limited to $1 million.

Despite asking for and receiving three loan modifications to reduce the payments and interest rates, the borrowers defaulted on the note and subsequently offered to turn the keys over to the Bank in exchange for a release of liability.  Although it did not release the borrowers, the Bank took over the property, and in December 2011, a receiver was appointed to run the hotel. During this time, the Bank discovered that $466,690.43 in property taxes and $119,466.43 in franchise fees had not been paid and approximately 25−30% of the rooms needed various repairs, including replacing television sets and installing new locks on doors, before they could be rented.

The Bank later began foreclosure proceedings on the property in Civil District Court of the Parish of Orleans, Louisiana.  The court's January 4, 2012 order stated the Bank was owed $5,572,918.50 in principal, accrued interest through September 21, 2011, prepayment penalty, late charges, and past due taxes, in addition to all "expenses incurred in enforcing the Note and

Mortgage including 25% of the principal as attorney's fees" and "not less than" $2500 "plus fees incurred by the Keeper." The property was foreclosed on April 5, 2012 by the Bank for the opening bid of $2,666,666.67.

After crediting the foreclosure sale price to the outstanding balance, the Bank sued appellees in Texas for the deficiency. Appellees filed a general denial and raised several affirmative defenses. In their first amended answer, appellees asserted the value of the property at the time of foreclosure exceeded any outstanding amount due on the note and guaranty. They requested the trial court determine the fair market value of the foreclosed property under sections 51.004 and 51.005 of the Texas Property Code and offset that amount against any amounts owed by any of the borrowers or guarantors.

The Bank filed traditional and no evidence motions for summary judgment. The trial court granted summary judgment in favor of the Bank against appellees "as to liability on" the promissory note and guaranty but denied it on the amount of the deficiency owed, stating "there remains an issue of fact as to the amount due and owing" to the Bank. Following a bench trial, the trial court concluded the fair market value of the property at the time of foreclosure was $5 million and exceeded the amount owed by appellees. The court ordered the Bank take nothing on its deficiency suit and made findings of fact and conclusions of law. The Bank then filed its notice of appeal. Appellees did not file a cross-appeal challenging the trial court's summary judgment in favor of the Bank and do not contest their liability on the note and guaranty.

In its first issue, the Bank claims the trial court erred by concluding appellees were entitled to a determination of the fair market value of the foreclosed property as well as an offset against any deficiency.

When the appellate record contains a reporter's record, findings of fact on the disputed issues are not conclusive and may be challenged for sufficiency of the evidence. *Las Colinas*

*Obstetrics–Gynecology–Infertility Ass'n, P.A. v. Villalba*, 324 S.W.3d 634, 638 (Tex. App.—Dallas 2010, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We independently evaluate the trial court's conclusions of law to determine whether the trial court correctly drew the legal conclusions from the facts. *See id*. We must uphold the trial court's conclusions of law if any legal theory supported by the evidence can sustain the judgment. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 736 (Tex. App.—Dallas 2007, pet. denied). We will reverse the trial court's judgment only if the conclusions are erroneous as a matter of law. *Id*. To the extent a conclusion of law is actually a finding of fact, we will review it under the appropriate standard. *See Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.*, 53 S.W.3d 382, 385−86 (Tex. App.—Dallas 2000, pet. denied) (citing *Ray v. Farmers State Bank*, 576 S.W.2d 607, 608 n.1 (Tex. 1979)).

In their amended answer, appellees asserted the value of the property "was greater than any outstanding amount due" and requested an offset against the deficiency under sections 51.004 and 51.005 of the property code. Section 51.005 provides that a guarantor may bring an action for a determination of the fair market value of real property if the holder of the debt has obtained a court judgment against the guarantor of the debt. TEX. PROP. CODE ANN. § 51.005(a)(1), (b) (West 2014). By its plain language, section 51.005 would apply only if the Bank previously had obtained a court judgment against the guarantors Kirit Bhakta, Ajit Bhakta, and Arun Patel. Because the Bank was suing to obtain a judgment, section 51.005 does not apply to the facts of this case.

Section 51.004 applies if "real property subject to a deed of trust or other contract lien is sold at a foreclosure sale under a court judgment foreclosing the lien and ordering the sale" and "the price at which the real property is sold is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency." TEX. PROP. CODE ANN. § 51.004(a). Section 51.004 further provides that any person obligated on the debt, including a guarantor,

> may bring an action in the district court in the county in which the real property is located for a determination of the fair market value of the real property as of the date of the foreclosure sale. The suit must be brought not later than the 90th day after the date of the foreclosure sale unless the suit is brought by a guarantor who did not receive actual notice of the sale before the date of sale, in which case the suit must be brought by the guarantor not later than the 90th day after the date the guarantor received actual notice of the sale.

*Id*. § 51.004(b). Likewise, section 51.005 requires the action to be brought "in the district court in which the real property is located . . . no later than the 90th day after the date of foreclosure sale." *Id*. § 51.005(b).

Here, the property, located in Louisiana, was subject to an April 2012 foreclosure sale in the Parish of Orleans under a court order, and the sale resulted in a deficiency; consequently, appellees did not bring their action "in the district court in the county in which the real property [was] located . . . not later than the 90th day after the date of the foreclosure sale." Rather, appellees brought their action in Dallas County six months after the foreclosure sale. Thus, under the plain language of sections 51.004 and 51.005, appellees were not entitled to a determination of the fair market value of the property or a finding that it exceeded the amount of the debt at the time of the foreclosure sale.

Finally, appellees argue "the trial court properly allowed [them] to introduce evidence of the fair market value of the Property as a defense to recovery," citing section 51.003 of the property code. *See* TEX. PROP. CODE ANN. § 51.003. Under section 51.003, the borrower in a deficiency suit may request that the trial court make a finding as to the fair market value of the

realty as of the date of the foreclosure sale. *Id*. § 51.003(b). If the trial court finds the fair market value to be in excess of the foreclosure sales price, then the borrower is entitled to an offset against the deficiency in the amount of the excess (less the amount of any obligations secured by a lien on the property but not extinguished by the foreclosure). *Id*. § 51.003(c). Although section 51.003 might have applied to the facts of this case if properly pleaded, appellees did not seek relief under that section and it was not tried by consent. They have, therefore, waived any right to offset under section 51.003. *See* TEX. R. CIV. P. 94; *SAS & Assoc., Inc. v. Home Mktg. Servicing, Inc.*, 168 S.W.3d 296, 301 (Tex. App.—Dallas 2005, pet. denied). We sustain the Bank's first issue.

In its second issue, the Bank claims the trial court erred by concluding it failed to establish the amount due and owing under the note and guaranty and to prove by a preponderance of the evidence that a certain balance is due and owing. The Bank also contends the trial court erred by concluding it was not entitled to attorney fees.

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court first examines the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id*. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id*. The point of error should be sustained only if the contrary proposition is conclusively established. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

We reverse the ruling for factual insufficiency of the evidence only if the ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or

unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

To recover for a debt due and owing under a promissory note, a party must establish that it is the legal holder of an existing note, the debtor's execution of the note, and that an outstanding balance is due and owing. *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 958 (Tex. App.—Dallas 2013, no pet.). A deficiency judgment is the amount by which the debt and foreclosure costs exceed the foreclosure sales price. *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 5 (Tex. 2014).

The Bank introduced the certified record of the proceedings in the Civil District Court for the Parish of Orleans, the loan documents, and Rajan Patel's testimony as custodian of the Bank's records and as senior vice president of the Bank who oversaw appellees' loan. According to the promissory note, the borrowers promised to pay the Bank the $4.6 million they borrowed as well as accrued interest of 8.75% on the outstanding principal balance, calculated on a "three hundred sixty (360) day year" based on the "actual number of days elapsed." In the event of a default, the entire principal balance and past accrued interest owed became "due and payable without notice or demand," interest accrued on the outstanding balance at 18%, and the borrowers agreed to pay all costs of collection including court costs and reasonable attorney's fees. The note also provided that all payments would be applied first to accrued interest, then to principal.

The January 2012 order of the Civil District Court stated that, as of September 21, 2011, appellees owed the Bank $4,527,946.05 in principal, $226,928.06 in accrued interest "together with interest beginning September 22, 2011, at the rate of 18% per annum until paid,"

$316,403.96 in a prepayment penalty, $34,950.05 in late charges, $466,690.43 in past due taxes, all "expenses incurred in enforcing the Note and Mortgage including 25% of the principal as attorney's fees" and "not less than" $2500 "plus fees incurred by the Keeper." The certified record also contains evidence that the property sold on April 5, 2012 for $2,666,666.67.

Patel testified, using a demonstrative exhibit, that after crediting the foreclosure sale price to the outstanding amount owed, the borrowers still owed the Bank $2,869,509.28. This total included the amounts detailed in the Louisiana order (but did not include the prepayment penalty which Patel specifically stated the Bank was not seeking to recover) along with $83,155.37 in expenses for the sheriff's sale of the property and expenses for the replacement door locks and television sets.

Testifying on behalf of the borrowers, Kirit Bhakta said the hotel was in good condition at the time the borrowers defaulted on the loan and that the principal balance of the loan was around $4.4 or $4.5 million. He conceded they had not paid the taxes on the property, were notified by La Quinta of a default for failure to pay franchise fees, and the Bank had to pay those expenses when it took over the property.

The trial court found that at the time of the foreclosure sale, appellees owed the Bank $4,527,946 and the fair market value of the property was $5,020,000. Although labeled conclusion of law, the trial court also found the Bank failed to establish an amount due and owing under the note and that no amount was due and owing the Bank. We conclude the evidence does not support these findings. Although the evidence showed the principal balance of the note was $4,527,946.05, appellees additionally owed, under the plain language of the note and guaranty, accrued unpaid interest, post default interest, late fees, "all costs of collection, including but not limited to, court costs and reasonable attorney's fees," and "any and all losses, damages, costs, . . . and expenses suffered by Lender by reason of the Borrower's default." And

–8–

the trial court based its findings of fact and conclusions of law on the erroneous conclusion that appellees were entitled to a determination of the fair market value of the property and an offset of the same amount. Because we have concluded they were not entitled to this determination, these findings and conclusions are clearly erroneous. The trial court erred by rendering a take nothing judgment. We sustain the Bank's second issue.

We reverse the trial court's judgment and remand this case for a determination of the amount of debt owed by appellees to the Bank as well as a determination of attorney's fees. *See* TEX. R. APP. P. 44.1(b); *In re N. Nat. Gas Co.*, 327 S.W.3d 181, 187 (Tex. App.—San Antonio 2010, orig. proceeding [mand. denied]).

141306F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

STATE BANK OF TEXAS, Appellant

No. 05-14-01306-CV          V.

GRANBURY HOSPITALITY, INC.,
Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-06398-B.
Opinion delivered by Justice Francis,
Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant STATE BANK OF TEXAS recover its costs of this appeal from appellee GRANBURY HOSPITALITY, INC..

Judgment entered November 20, 2015.