AFFIRM; and Opinion Filed July 11, 2013.



In The
Court of Appeals
Fifth District of Texas at Dallas

No. 05-11-01546-CV

GLENN SULLIVAN, Appellant
V.
JANI-KING OF NEW YORK, INC., Appellee

On Appeal from the 160th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 05-12092

## MEMORANDUM OPINION

Before Justices Lang-Miers and Fillmore[1]
Opinion by Justice Lang-Miers

Jani-King of New York, Inc. sued Glenn Sullivan for breach of contract and fraudulent inducement. Sullivan counterclaimed for breach of contract and fraudulent inducement. A jury found in favor of Jani-King on all issues. Sullivan raises nine issues on appeal. For the following reasons, we affirm the trial court's judgment. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled.

### BACKGROUND

Jani-King operates and franchises commercial cleaning businesses. In 1998, Sullivan purchased a Jani-King franchise and signed a franchise agreement. The franchise agreement allowed Sullivan to solicit cleaning contracts, but those contracts had to be approved by Jani-

---

[1] The Honorable Mary Murphy, retired Justice, Court of Appeals for the Fifth District of Texas at Dallas, sat on the panel on submission but did not participate in this decision.

King. The franchise agreement required Sullivan to pay Jani-King a 10% royalty fee and a 0.5% advertising fee calculated on Sullivan's gross revenue. Jani-King in return provided advertising services and billed and collected payments from the clients. The franchise agreement prohibited Sullivan from engaging or having a financial interest in a competing business.

In 2002, Sullivan sued Jani-King in New York alleging that Jani-King breached the franchise agreement. As part of its investigation of Sullivan's lawsuit, Jani-King learned that Sullivan had started his own cleaning company separate from Jani-King and had five accounts he serviced outside the Jani-King franchise. In 2003, Jani-King sued Sullivan in Dallas County alleging that Sullivan breached the franchise agreement by, among other things, operating a competing business. The parties settled their disputes in both lawsuits and executed a settlement agreement dated May 1, 2004.

In the settlement agreement, Sullivan acknowledged that he had operated a competing business. He agreed to "immediately and permanently cease operation" of the competing business "and to immediately take all steps necessary to assign or transfer all competing contracts, accounts and/or customers . . . to Jani-King." For its part, Jani-King agreed to offer Sullivan in good faith, within twelve months of the date of the settlement agreement, accounts with monthly gross billings of at least $18,000, and, if it failed to do so, to pay Sullivan 25% of the difference between $18,000 and the actual gross monthly billings of the contracts offered to Sullivan. In the settlement agreement, the parties agreed that the franchise agreement continued in full force and effect.

In 2005, Jani-King sued Sullivan for fraudulent inducement and breach of the franchise and settlement agreements. Jani-King alleged, among other things, that Sullivan did not comply with the provisions in the settlement agreement to "immediately and permanently cease operation" of the competing business and to transfer the outside accounts to Jani-King and did

not comply with the franchise agreement to pay royalty and advertising fees to Jani-King. Sullivan counterclaimed for fraudulent inducement and breach of the settlement agreement alleging that Jani-King did not offer him contracts with monthly gross billings of at least $18,000. Before trial, Jani-King dropped its claim of fraudulent inducement.

The jury found that Sullivan failed to comply with both the settlement agreement and the franchise agreement and awarded Jani-King $223,075 in damages and $80,000 in attorney's fees for representation at trial. The jury found that Jani-King did not commit fraud against Sullivan.

On appeal, Sullivan argues that the evidence is legally and factually insufficient to support the jury's findings, and the trial court erred by allowing testimony about Jani-King's damages and attorney's fees and by not reforming the judgment to assess damages in favor of him and against Jani-King.

## SUFFICIENCY OF THE EVIDENCE

Sullivan challenges the legal and factual sufficiency of the evidence supporting several of the jury's answers. Jani-King argues that Sullivan's factual sufficiency complaints are not preserved for appellate review.

A party complaining that evidence is factually insufficient to support the jury's findings must file a motion for new trial to preserve the complaint for appellate review. TEX. R. CIV. P. 324(b)(2), (3). Sullivan did not file a motion for new trial, but he argues that his motion to disregard the jury's findings or for judgment notwithstanding the verdict suffices as a motion for new trial and that we should look to the substance of his motion rather than its form. At oral argument, Sullivan contended that the general request for relief in his motion—"[f]or any further relief to which Sullivan may be entitled"—was sufficient to preserve the issue for our review. And he argues that our opinion in *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699

(Tex. App.—Dallas 2011, pet. denied) supports his argument that he preserved the factual sufficiency complaints for appellate review. We do not agree.

A motion for new trial asks the trial court to vacate the judgment and order a new trial on the issues. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 73 (Tex. 2008) (orig. proceeding) (stating "fundamental nature of a new trial motion . . . seeks not to reform, but to *vacate* the court's judgment); *Mercer v. Band*, 454 S.W.2d 833, 836 (Tex. App.—Houston [14th Dist.] 1970, no writ) (stating motion for new trial must "seek to have an existing judgment set aside and request a relitigation of the issues"). Sullivan's motion to disregard the jury's findings or for judgment notwithstanding the verdict did not ask the trial court to vacate the judgment and order a new trial. Instead, it asked the trial court to strike the jury's answers and render a judgment in his favor because "the evidence conclusively proves facts that establish Sullivan's right to judgment as a matter of law."

We also do not agree that our opinion in *PopCap Games* controls the outcome in this case. In *PopCap Games*, we had to determine whether a motion for new trial on the sole issue of damages sufficed as a motion for new trial so as to extend the deadline for filing a notice of appeal. 350 S.W.3d at 715. We said it did because MumboJumbo "expressly sought to relitigate some of the issues in the case." *Id.* at 716. We also noted that if the trial court granted MumboJumbo's motion, a new trial would have resulted. *Id.* at 716–17. Unlike in *PopCap Games*, however, Sullivan's motion did not seek to relitigate any of the issues in the case. And if the trial court had granted Sullivan's motion, it would not have resulted in a new trial but in a judgment rendered in Sullivan's favor. We conclude that *PopCap Games* does not apply here.

Because Sullivan did not ask for a new trial on any of the issues, we conclude that his motion to disregard the jury's findings or for judgment notwithstanding the verdict does not satisfy the requirements of a motion for new trial and was not sufficient to preserve his factual

sufficiency complaints for our review. *See Brookshire Grocery Co.*, 250 S.W.3d at 73; *Mercer*, 454 S.W.2d at 836. Consequently, only his legal sufficiency challenges are properly before us.

## Standard of Review

An appellant challenging the legal sufficiency of the evidence supporting an adverse finding on an issue for which the appellant did not have the burden of proof must show that there is no evidence to support the jury's adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a no-evidence challenge on appeal if the record shows (1) a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). "Evidence is legally sufficient if it 'would enable reasonable and fair-minded people to reach the verdict under review.'" *Exxon Corp.*, 348 S.W.3d at 215 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

In conducting our review, we examine the evidence in the light most favorable to the jury's finding. *City of Keller*, 168 S.W.3d at 822. We must assume that the jury resolved conflicting evidence and made reasonable inferences from the evidence in favor of the prevailing party. *Guerra*, 348 S.W.3d at 228; *City of Keller*, 168 S.W.3d at 821.

When the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue for which the appellant had the burden of proof, the appellant must show that the evidence establishes as a matter of law all vital facts to support the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In our review, we first examine the record for evidence supporting the adverse finding. *Id.* If there is no evidence to support the adverse finding, we next examine the record to determine if the contrary finding is established as

–5–

a matter of law. *Id.* "Evidence is conclusive only if reasonable people could not differ in their conclusions[.]" *City of Keller*, 168 S.W.3d at 816.

Sullivan challenges the sufficiency of the evidence to support the jury's findings in answer to questions one, three, four, six, eight, nine, ten, and eleven. Because his factual sufficiency complaints are not preserved, we construe his arguments as legal sufficiency challenges.

### Question 1: Sullivan failed to comply with the settlement agreement

In issue one, Sullivan argues that there is legally insufficient evidence to support the jury's finding that he failed to comply with the settlement agreement. It is undisputed that Sullivan obtained five professional cleaning accounts outside the Jani-King franchise. The settlement agreement required Sullivan "to immediately and permanently cease operation of" those accounts "and to immediately take all steps necessary to assign or transfer all contracts, accounts and/or customers" for those five accounts to Jani-King. At trial, Sullivan admitted that he did not immediately cease operation of the competing business after signing the settlement agreement and that he did not transfer those accounts to Jani-King. Based on Sullivan's own admission, reasonable and fair-minded people could have concluded that Sullivan failed to comply with the settlement agreement. *See Guerra*, 348 S.W.3d at 228; *City of Keller*, 168 S.W.3d at 815, 827. We resolve issue one against Sullivan.

### Question 3: Sullivan failed to comply with the settlement agreement first

In issue two, Sullivan challenges the legal sufficiency of the evidence to support the jury's finding that he was the first to fail to comply with the settlement agreement. Sullivan argues that his failure to comply with the settlement agreement was excused because he "could not transfer any accounts to Jani-King without documents and approval from Jani-King" and that Jani-King did not give him the "proposals and contracts" for those accounts. He also argues that

–6–

Jani-King failed to offer him the business promised in the settlement agreement and, as a result, his failure to comply was excused. But the question submitted to the jury was which party failed to comply with the settlement agreement first, not whether Sullivan's breach was excused.

The settlement agreement required Sullivan to immediately stop operating the competing business and to immediately take steps to transfer those accounts to Jani-King, and it is undisputed that he did not do so. Jani-King argues that the settlement agreement did not require it to draft contracts for Sullivan, but, even if it did, Sullivan did not provide the detailed information necessary to prepare the contracts. Jani-King presented evidence that it needed information about the size of the account, how much carpet or tile, the number of days a week service was to be provided, and the client's daily, weekly, monthly, and quarterly cleaning schedule before a contract could be prepared. The evidence showed that Sullivan did not provide this information to Jani-King, did not ask for Jani-King's assistance in transferring the accounts, and refused Jani-King's assistance when it was offered.

Additionally, unlike Sullivan's obligations under the settlement agreement, which were to "immediately" stop the competing business, Jani-King had twelve months in which to provide a certain level of business to Sullivan. The evidence showed that a month or two after the settlement agreement was signed, Jani-King offered Sullivan an account with the Cheesecake Factory in New York with gross monthly billings of over $16,000 and he refused it.

Having reviewed the record, we conclude that the evidence is legally sufficient to support the jury's finding that Sullivan was the first party to fail to comply with the settlement agreement. We resolve issue two against Sullivan.

−7−

***Question 4: Jani-King's failure to comply with the settlement agreement was excused***

In issue three, Sullivan challenges the legal sufficiency of the evidence to support the jury's finding that Jani-King's failure to comply with the settlement agreement was excused. The trial court instructed the jury that

> Jani-King's failure to comply with the Settlement Agreement is excused by Mr. Sullivan's prior repudiation of the Settlement Agreement. A party repudiates an agreement when he indicates, by his words or actions, that he is not going to perform his obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

When one party to a contract commits a material breach of the contract, the other party is excused from further performance under the contract. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

Sullivan argues that there was no reasonable basis for the jury's finding because Jani-King "admitted that it never complied with the Settlement Agreement at any point in time" and because he tried to transfer his outside accounts to Jani-King but Jani-King would not provide the documents he needed to transfer the accounts. But the question is not whether Jani-King "admitted that it never complied with the Settlement Agreement," but whether its noncompliance was excused.

In the settlement agreement, Jani-King stated that Sullivan's agreement to immediately and permanently cease operation of his competing business was "an essential inducement to the agreement of Jani-King to settle" the lawsuits and "that breach of this provision . . . may result in irreparable injury to Jani-King." Sullivan admitted that he did not immediately cease operation of his competing business and did not transfer the accounts. And we previously concluded that the evidence is sufficient to show that Sullivan breached the settlement agreement first. Consequently, we further conclude that the evidence is sufficient to support a finding that Jani-King's breach was excused. *See id.* We resolve issue three against appellant.

***Question 6: Jani-King did not commit fraud against Mr. Sullivan***

In issue four, Sullivan argues that "[t]he Trial Court erred when it decided that Jani-King did not commit fraud against Mr. Sullivan." We construe this issue to challenge the legal sufficiency of the evidence to support the jury's finding that Jani-King did not commit fraud against Sullivan:

> QUESTION NO. 6:
>
> > Did Jani-King commit fraud against Mr. Sullivan?
>
> Fraud occurs when –
>
> > a. a party makes a material misrepresentation, and
> >
> > b. the misrepresentation is made with the knowledge of its falsity or made recklessly without knowledge of the truth and as a positive assertion, and
> >
> > c. the misrepresentation is made with the intention that it should be acted on by the other party, and
> >
> > d. the other party relies on the misrepresentation and thereby suffers injury.
>
> Misrepresentation means –
>
> > a. a false statement, or
> >
> > b. a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, or
> >
> > c. a statement of opinion that the maker knows to be false, or
> >
> > d. an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.
> >
> > "Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.
>
> Answer "Yes" or "No."
>
> Answer: _NO_

Sullivan contends that he "clearly proved all elements of his fraud claim against Jani-King" and cites evidence that Jani-King did not respond to his "dozens of phone calls or written

communication" about transferring the accounts, "procurement of new business," and failure to make payments to him pursuant to the settlement agreement. Sullivan contends that Garry Clark, then the president of Jani-King, represented that he would personally assist Sullivan in transferring the accounts to Jani-King and would be Sullivan's sole contact at Jani-King.

We first examine the record to determine if there is some evidence to support the jury's finding. *Dow Chem. Co.*, 46 S.W.3d at 241. The settlement agreement stated that Jani-King would "make reasonable efforts to persuade Sullivan's client Alcan to transfer its business to Jani-King" including "an in-person sales call by Mr. Garry Clark, accompanied by Sullivan" if necessary. But it did not state that Clark would be Sullivan's sole contact at Jani-King. Clark testified that he offered to go with Sullivan to talk to Alcan about transferring the account to Jani-King and Sullivan refused Clark's assistance. Clark also testified that he would not have agreed to be the only person to work directly with Sullivan in transferring the accounts because the accounts were in New York and Clark worked in the Dallas area.

Sullivan does not cite any evidence to support the other elements of his fraud claim, such as whether Clark made any misrepresentations with the intent not to perform as promised. And to the extent the evidence conflicted about whether Jani-King or Clark made misrepresentations to Sullivan before the settlement agreement was signed, the jury resolved the conflict in favor of Jani-King. Consequently, we conclude that there is more than a scintilla of evidence to support the jury's finding that Jani-King did not commit fraud against Sullivan, and we do not need to consider whether Sullivan established his fraud claim as a matter of law. *See id.* We resolve issue four against Sullivan.

### Question 8: Sullivan breached the franchise agreement

In issue five, Sullivan challenges the jury's finding that he breached the franchise agreement. Sullivan initially argues that any disputes about the franchise agreement were

resolved in the settlement agreement and that by raising this issue Jani-King sought "to re-litigate matters that were resolved and dismissed with prejudice." He states that "the Trial Court should have barred that claim by waiver," but he does not explain that argument or cite authority or the record to support the argument.

Sullivan next argues that Jani-King failed to provide him written notice and an opportunity to cure any noncompliance with the franchise agreement. The franchise agreement required Sullivan to pay Jani-King certain fees based on Sullivan's gross revenues, and Sullivan admitted that he had not paid Jani-King any fees since he signed the settlement agreement. He contends, however, that "Jani-King failed to give Sullivan mandatory, specific written notice per its own policies and procedures, [and] it was harmful error to find and enter a judgment against Sullivan as to this issue." Jani-King argues that the notice provision upon which Sullivan relies applied only if Jani-King chose to terminate the franchise agreement because of Sullivan's default and did not apply if Jani-King chose instead to sue Sullivan for breach of the franchise agreement.

Sullivan moved for directed verdict on the notice issue, and the trial court overruled the motion, stating, "You can raise it again before we send the – if the [sic] we send a Charge to the Jury." But Sullivan did not request a jury charge on the notice issue and, consequently, did not obtain a jury finding about whether Jani-King failed to comply with the notice provision. *See* TEX. R. CIV. P. 278, 279; *see also Cadillac Bar West End Real Estate v. Landry's Restaurants, Inc.*, No. 05-11-01540-CV, 2013 WL 1721954, at *4 (Tex. App.—Dallas Apr. 22, 2013, no pet. h.) (stating that failure to give notice as required by agreement is affirmative defense that must be proved); *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied). As a result, we may not reverse the judgment on this basis. *See* TEX. R. CIV. P. 278, 279; *see also Cadillac Bar West End*, 2013 WL 1721954, at *4.

–11–

To the extent this issue challenged the legal sufficiency of the evidence to support the jury's answer, we conclude that the evidence is legally sufficient. In the settlement agreement, the parties agreed that their franchise agreement remained in full force and effect. The franchise agreement required Sullivan to pay certain fees, and Sullivan admitted he had not paid those fees since May 2004 when he signed the settlement agreement. Based on Sullivan's admission, reasonable and fair-minded people could conclude that Sullivan breached the franchise agreement. *See Guerra*, 348 S.W.3d at 228; *City of Keller*, 168 S.W.3d at 821. We resolve issue five against appellant.

## Question 10: Sullivan engaged in a competing business

In issue six, Sullivan argues that the jury's finding that he continued to engage in or have a financial interest in a competing business after the date of the settlement agreement is "against the great weight of the evidence." This is a complaint about the factual sufficiency of the evidence which was not preserved for our review. To the extent the argument could be construed to also challenge the legal sufficiency of the evidence, we conclude that the evidence was legally sufficient. Sullivan testified that he continued to operate his business outside the Jani-King franchise and continued to service the accounts he was supposed to transfer to Jani-King after he signed the settlement agreement "all the way up through today," the date of trial. We conclude that the evidence is legally sufficient to support the jury's finding. We resolve issue six against appellant.

## Question 11: Jani-King's attorney's fees

The jury awarded Jani-King $80,000 in attorney's fees for representation at trial. In issue seven, Sullivan contends that the evidence was "overwhelmingly insufficient" to support the jury's award. To the extent this argument challenges the legal sufficiency of the evidence to

support the jury's award of attorney's fees, we first must consider Sullivan's contention that the trial court erred by admitting the testimony of Jani-King's expert on attorney's fees.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Guerra*, 348 S.W.3d at 235. We will affirm the trial court's ruling unless the court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2001).

Jani-King called expert witness attorney David Cabrales to testify about the reasonableness of attorney's fees. Sullivan objected to Cabrales's testimony on two grounds: Cabrales was not identified as an expert witness in Jani-King's pretrial filings and Jani-King did not produce the documents Cabrales reviewed to prepare for his testimony as required by civil procedure rule 194.2(f)(4)(A).

The trial court overruled the first objection because the issue had been resolved in a pretrial hearing. The appellate record does not contain a transcript of that hearing; however, it does contain a document dated February 2007, four years before trial, identifying Cabrales as a testifying expert on the issue of attorney's fees. The trial court also overruled the second objection because it was premature. During his actual testimony, Cabrales said he did not review any legal bills to prepare for his testimony and Sullivan did not renew his objection based on rule 194.2(f)(4)(A). We conclude that the trial court did not abuse its discretion by overruling the objections.

Cabrales testified that reasonable and necessary attorney's fees through trial for this case were $150,000 to $175,000. He based his opinion on the age of the case, the novelty and difficulty of the questions involved, the skill required to render proper legal services, the likelihood that accepting the case would preclude other employment, the fees customarily charged for similar services, the amount of time involved and any time limitations imposed by

the client or circumstances, the nature and length of the relationship with the client, and the experience, reputation, and ability of the lawyers. He also testified that the work on this case involved events that happened in New York and required the lawyers to "go through particular procedures that are unique to state law" to be able to get information from witnesses who lived in New York. We conclude that there is more than a scintilla of evidence to support the jury's award of $80,000 in attorney's fees. We resolve issue seven against appellant.

### Question 9: Jani-King's damages

Jani-King presented evidence of the damages it incurred when Sullivan failed to pay the royalty and advertising fees as required by the franchise agreement. In issue eight, Sullivan complains that Jani-King did not present any evidence that it incurred advertising expenses on Sullivan's behalf. He also contends that the trial court erroneously overruled his objection to the testimony of Jani-King's witness on damages, Jill Bean, because Bean based her opinion and calculation of Jani-King's damages on documents Jani-King did not produce in discovery and because Jani-King did not plead these damages. The trial court overruled the objections. We address Sullivan's evidentiary complaints first.

Bean testified that she calculated the fees Sullivan owed but did not pay using an invoice log already admitted into evidence and that Sullivan agreed accurately stated the gross revenue he received from the accounts he serviced outside the Jani-King franchise. She testified that she totaled the gross revenue from the invoice log and, after discounting the total by the sales tax amount, multiplied the gross revenue by 10% to arrive at the royalty fees owed and by 0.5% to arrive at the advertising fees owed. She also calculated a $25 per day non-reported business fee using the same invoice log. Additionally, Jani-King's live pleading included an allegation that Sullivan owed these fees. Because Bean performed mathematical calculations based on an exhibit already in evidence, and because Jani-King did plead for recovery of these damages, we

conclude that the trial court did not abuse its discretion by overruling Sullivan's objections to Bean's testimony.

Sullivan also complains that the award for advertising fees must be reversed because Jani-King did not present evidence that it incurred any advertising expenses for Sullivan after January 1, 2005. The jury was asked a broad-form damages question taking into consideration the unpaid royalty fees, advertising fees, and non-reported business fees. Sullivan did not ask the jury for separate damages findings. As a result, Sullivan's challenge on appeal is limited to the legal sufficiency of the evidence supporting the entire award. *Tex. Youth Comm'n v. Koustoubardis*, 378 S.W.3d 497, 501–02 (Tex. App.—Dallas 2012, no pet.). But Sullivan does not challenge the entire damages award. *See id.* Additionally, the franchise agreement requires Sullivan to pay the fees "for the remainder of the term" of the agreement—payment of the advertising fee was not based on whether Jani-King provided advertising services specifically to Sullivan during a certain period. We resolve issue eight against appellant.

## REFORM JUDGMENT

In issue nine, Sullivan argues that, based on the analysis of issues one through eight, the trial court erred by not reforming the judgment to assess damages against Jani-King and in his favor. Because we have resolved issues one through eight against Sullivan, we also resolve issue nine against him.

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
_____
ELIZABETH LANG-MIERS
JUSTICE

111546F.P05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GLENN SULLIVAN, Appellant

No. 05-11-01546-CV     V.

JANI-KING OF NEW YORK, INC.,
Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 05-12092.
Opinion delivered by Justice Lang-Miers,
Justice Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Jani-King of New York, Inc. recover its costs of this appeal from appellant Glenn Sullivan.


Judgment entered this 11th day of July, 2013.


/Elizabeth Lang-Miers/
_____
ELIZABETH LANG-MIERS
JUSTICE