**TEXAS YOUTH COMMISSION,**
**Appellant**

v.

**Christopher KOUSTOUBARDIS,**
**Appellee.**

**No. 05–11–00196–CV.**

Court of Appeals of Texas,
Dallas.

July 26, 2012.

Tim Bray, Assistant Attorney General, General Litigation Division, Yvonne Denise Powell Bennett, Assistant Attorneys General, Office of Attorney General, Austin, TX, for Appellant.

Don A. Tittle, Law Office of Don Tittle, Julie E. Heath, Farrow–Gillespie & Heath LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and MYERS.

## OPINION

Opinion By Justice MOSELEY.

Christopher Koustoubardis sued the Texas Youth Commission (TYC) for violating the Texas Whistleblower Act and section 64.102 of the Texas Human Resources Code after TYC terminated his employment. TYC filed a plea to the jurisdiction asserting sovereign immunity from Koustoubardis' section 64.102 claim; the trial court conditionally denied the plea. The case proceeded to trial and the jury returned a verdict favorable to Koustoubardis on both claims. The trial court entered a final judgment awarding Koustoubardis damages for his whistleblower claim, but sustained TYC's previously filed plea to the jurisdiction with respect to the section 64.102 claim. Bringing three issues on appeal, TYC challenges the trial court's failure to dismiss the section 64.102 claim before trial and asserts the evidence was insufficient to sustain

portions of the damages award.[1] We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Koustoubardis testified he began working for TYC as an Administrative Law Judge (ALJ) in 2002. His job duties included conducting parole revocation hearings for youths in TYC's custody. On February 14, 2008, as Koustoubardis prepared for a parole revocation hearing, he (and defense counsel for the youth) overheard his supervisor, Chief ALJ Kaci Sohrt, talking via speaker phone to a parole officer and a police officer who would be testifying at the hearing. Koustoubardis testified he "heard Kaci coaching the witness on the speakerphone [sic]." Specifically, he heard Sohrt tell the police officer "what an excited utterance was as an exception to the hearsay rule." Koustoubardis thought Sohrt was informing the police officer about the excited utterance exception because the youth's sister (whose testimony formed the foundation to the State's case to revoke the youth's parole) had not appeared for the hearing.[2] According to Koustoubardis, if the sister's statement to the police officer fell within an exception to the hearsay rule, then the officer could testify about what the sister told him, negating the State's quandary about how to prove its revocation case without testimony from its key witness.

Koustoubardis testified that after Sohrt's phone call with the officers ended, a clerk at TYC instructed him to call Sohrt before he began the hearing. Sohrt told him: "Chris, you're going to hear an excited utterance in this hearing today. You need to allow it. This kid needs to be revoked."[3] Koustoubardis told Sohrt she was denying the defendant youth the right to a fair hearing and "[i]t is hard for me to be impartial to this youth if you are telling

1. In a single cross issue, Koustoubardis argues the trial court incorrectly sustained TYC's plea to the jurisdiction in the final judgment. We decline to address Koustoubardis' cross-issue because it raises an argument we only need to consider if we reverse the judgment on the whistleblower claim, which we do not do. *See generally* TEX.R.APP. P. 47.1.

2. The youth's sister also had not appeared at previously scheduled hearings; Koustoubardis had granted the State continuances at those prior hearings.

3. In its brief, TYC concedes "the Chief ALJ regularly provides legal advice to parole officers, such as in this case." During oral argument, the following exchange occurred:

Court: Mr. Koustoubardis is saying that he had a conversation with Judge Sohrt and had previously overheard Judge Sohrt talking with a witness about testimony that would be coming before him. Now, I recall your brief indicating this is not an uncommon event, that part of the job of the ALJ is to confer with department employees.
TYC's counsel: Correct, Your Honor.

Court: To do what? To give legal advice?
TYC's counsel: To discuss the issues that may be coming before the ALJs. And Chief Judge Sohrt ... she wouldn't necessarily have taken any appeal or reviewed an appeal of those cases that she may have provided some information on. So there wasn't a conflict....
Court: In that regard, again this is a summary, Mr. Koustoubardis is saying that Judge Sohrt told him that he was going to hear evidence of an excited utterance and he needed to let that testimony in under an exception to hearsay and revoke the use of parole. Was that contradicted at trial?
TYC's counsel: Ms. Singer–Sohrt testified that it was not uncommon for her to make those types of statements to parole officers, making sure that the issues would be adequately covered during that hearing, especially with Mr. Koustoubardis because he had a problem understanding that area of the law.
Court: So in response to my question, was that testimony contradicted at trial? I take it your answer was "no, it was not contradicted."
TYC's counsel: Correct.

me how to rule on evidence that I haven't even heard yet."

Koustoubardis testified that during the revocation hearing, the officer testified that when he questioned the complainant (the youth's sister), her demeanor was "calm, fine." Based on the evidence presented at the revocation hearing, Koustoubardis concluded the officer's hearsay testimony did not fall within an exception to the hearsay rule. Because the State lacked evidence supporting the allegations against the defendant—because the witness did not appear and the witness's prior statements to the police officer were not admissible—Koustoubardis did not find the State's allegations true.

After the hearing, Koustoubardis called the TYC Abuse Hotline to report Sohrt's actions.[4] The next day Koustoubardis was contacted by TYC's General Counsel, who informed Koustoubardis that the General Counsel was ending any investigation into Sohrt and that Koustoubardis was not to contact the Ombudsman's office again. Additionally, shortly after Koustoubardis called the Abuse Hotline, Sohrt filed a complaint related to Koustoubardis' job performance; the complaint did not result in discipline against Koustoubardis. At trial, when asked whether he believed Sohrt filed the complaint to retaliate against him for his report to the Abuse Hotline, Koustoubardis replied: "No doubt in my mind."

In August 2008, Koustoubardis was contacted by an assistant ombudsman at TYC, Shalonda Richardson–Grant, about an investigation she was conducting to determine whether another ALJ's actions raised concerns about the ALJ tampering with records and about the ALJ placing a youth in danger of double jeopardy. Even though he thought his assistance to Richardson–Grant could result in his termination (because he was talking to the Ombudsman's office after being told not to), he cooperated with Richardson–Grant and told her he was concerned about tampering and double jeopardy. Koustoubardis testified at trial that after he talked to Richardson–Grant, he "was just sitting back waiting to be terminated because I knew it was going to happen." On September 18, 2008, approximately three or four weeks after talking to Richardson–Grant, Koustoubardis was terminated. Koustoubardis sued TYC for violating the Texas Whistleblower Act, TEX. GOV'T CODE § 554.002 (West 2004), and section 64.102 of the Human Resources Code, Act of June 8, 2007, 80th Leg., R.S., ch. 263, 2007 Tex. Gen. Laws 451, 454, *amended and redesignated by*, Act of April 29, 2011, 82nd Leg., R.S., ch. 85, 2011 Tex. Gen. Laws 429, 433 (current version at Tex. Hum. Res.Code § 261.102 (West 2001 & Supp. 2011)).[5]

### LAW AND ANALYSIS

### A. Section 64.102 Claim [6]

■ TYC asserts that even though the trial court eventually dismissed the section 64.102 claim, its failure to do so before trial was error that adversely affected TYC because, by including the section

---

4. Additionally, on March 17, 2008, Koustoubardis sent an email describing the events of February 14, 2008, to TYC's Conservator, Ombudsman, and General Counsel.

5. Although section 64.102 has been redesignated as section 261.102, we will refer to section 64.102 throughout this opinion to

maintain consistency with the proceedings below and the parties' briefs.

6. On appeal, TYC argues the trial court lacked jurisdiction over the section 64.102 claim because section 64.102 contains no waiver of sovereign immunity. In this opinion, we do not consider the merits of this argument.

64.102 claim in the jury charge, the trial court "lowered the causation standard of proof" for the whistleblower claim. We conclude TYC failed to preserve this argument for appeal.

At the charge conference, TYC only objected to the jury question relating to Koustoubardis' section 64.102 claim on the ground that "it includes a question on section 64.102. And it is the defendant's position that that is not a separate cause of action."

■ The inquiry about whether a party adequately preserved an alleged jury charge error for appeal focuses on the trial court's awareness of and opportunity to remedy the alleged problem. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829–30 (Tex.2012) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240 (Tex.1992)). A party must have made the trial court aware of the problem, timely and plainly, and obtained a ruling. *See id.; see also* Tex.R.App. P. 33.1(a).

Nothing about TYC's objection would have made the trial court aware that TYC was concerned the question regarding the section 64.102 claim would "lower the causation standard of proof" on the whistleblower claim. Therefore, TYC failed to preserve this complaint for appeal. *See* Tex.R.App. P. 33.1(a).

■ TYC also asserts that even though the trial court eventually dismissed the section 64.102 claim, its failure to do so before trial was error that adversely affected TYC because the trial court allowed testimony about Koustoubardis' cooperation with the investigation conducted by Richardson–Grant. TYC asserts this testimony was relevant only to the section 64.102 claim, and because the trial court did not have jurisdiction to consider that claim (as it ultimately concluded post-tri-

al), the evidence was irrelevant and inadmissible. However, as TYC's counsel conceded during oral argument, TYC did not object to the testimony as irrelevant in the trial court. Neither did it seek an instruction—during trial or at the charge conference—that the testimony as to Koustoubardis' cooperation with Richardson–Grant was relevant only as to the 64.102 claim, and not the whistleblower claim. Because TYC did not object to the trial court's admission of this testimony or otherwise seek a limiting instruction as to its admissibility or consideration, it has not preserved the alleged error for appellate review. *See id.; see also Cruz*, 364 S.W.3d at 829–30.

We overrule TYC's first issue.

## B. Compensatory Damages

In the jury question about compensatory damages, the jury was instructed: " 'Compensatory damages' include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses." At the charge conference, TYC did not object to the submission or wording of the compensatory damages questions or instruction. On appeal, TYC asserts the trial court erred by awarding compensatory damages because there was insufficient evidence to support an award of damages for Koustoubardis' mental anguish.

■ When a damages question is submitted in broad form (as it was here), it is difficult (if not impossible) for us to determine the amount the jury awarded for each element of damages included in the question. *See City of Houston v. Levingston*, 221 S.W.3d 204, 230 (Tex.App.-Houston [1st Dist.] 2006, no pet.). To challenge a multi-element damage award, a party must address all of the elements of damages and show the evidence was insufficient to support the entire award. *G.T.*

*Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 885 (Tex.App.-Dallas 2003, no pet.). Failure to do so results in a waiver of the sufficiency challenge. *See id.; see also Levingston*, 221 S.W.3d at 230; *Norfolk S. Ry. Co. v. Bailey*, 92 S.W.3d 577, 583–84 (Tex.App.-Austin 2002, no pet.).

■ Because TYC did not object to the broad-form submission and did not ask for separate damages findings, its challenge on appeal is limited to the legal sufficiency of the evidence supporting the entire award. *See Gonzalez*, 106 S.W.3d at 885. However, TYC does not argue the evidence was insufficient to support the entire compensatory damages award. It does not challenge whether the evidence of emotional pain and suffering, inconvenience, loss of enjoyment of life, or other noneconomic loss was sufficient to support the award. Because TYC did not address all of the elements of damages and show the evidence was insufficient to support the entire award, we overrule TYC's second issue. *See id.*

## C. Front Pay

■■ Front pay is an equitable remedy intended to compensate a plaintiff for future lost wages and benefits. *See Tex. Com'n on Human Rights v. Morrison*, 346 S.W.3d 838, 851 (Tex.App.-Austin 2011, no pet.). We review the trial court's decision to grant or deny equitable relief for an abuse of discretion. *See id.* A court abuses its discretion if it acts arbitrarily and without reference to guiding rules or principles or if it misapplies the law to the facts of the case. *See id.*

In the final judgment, the trial court made an equitable award of front pay in the amount of $464,792. TYC does not challenge the trial court's decision to award front pay. However, it argues there was insufficient evidence to sustain the amount of front pay the trial court awarded.

Koustoubardis' expert testified as to front pay, projecting damages for future lost wages and benefits between $421,254 and $587,540, depending on how many more years Koustoubardis would have worked at TYC. However, Koustoubardis' former supervisor, Chief ALJ Sohrt, testified that approximately one year after Koustoubardis was terminated, TYC eliminated his position as part of an agency-wide reduction-in-force and TYC would have terminated Koustoubardis at that time. Therefore, TYC argues, the front-pay award should be no greater than the value of wages and benefits Koustoubardis would have earned had he stayed employed until the reduction-in-force took effect. TYC asserts the proper amount of front pay was an amount approximately equal to one year of wages and benefits, which totals $71,468.88.

TYC asserts that Sohrt's testimony was the only evidence admitted by the trial court about the appropriate amount of front pay and, therefore, the trial court erred by awarding more than one year of wages and benefits. However, as the sole judge of a witness's credibility, the trial court was free to conclude Sohrt was not a credible witness and to disregard her testimony, including her statements about Koustoubardis' job being eliminated by the reduction-in-force. *See Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*, 181 S.W.3d 879, 894 (Tex.App.-Dallas 2006, no pet.) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003)). The trial court stated in the final judgment that it based its award of front pay on evidence submitted at trial. That evidence included the testimony of Koustoubardis' expert witness, who testified as to a range of front pay that included the amount awarded by the trial court.

503

We conclude the trial court did not abuse its discretion by awarding $464,792 to Koustoubardis for front pay. We overrule TYC's third issue.

CONCLUSION

Having resolved TYC's three issues, we affirm the trial court's judgment.

