Opinion issued November 7, 2013



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-11-00471-CV

———————————————

## A & L INDUSTRIAL SERVICES INC., Appellant

## V.

## SHEDRICK OATIS AND WILLIE SMITH, Appellees

On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Case No. 09CV0610

## MEMORANDUM OPINION

Appellees Shedrick Oatis and Willie Smith sued their former employer, Appellant A & L Industrial Services Inc. (A & L), claiming discrimination and retaliatory action under Texas Labor Code 21.055. A jury found retaliatory action

and awarded them back pay and compensatory and punitive damages. On appeal, A & L argues the evidence was insufficient to support the jury's findings regarding (1) retaliatory action, (2) damages, and (3) malice. A & L also argues that the trial court erred in submitting spoliation instructions to the jury. We affirm the trial court's judgment.

## Background

A & L hired Oatis and Smith to perform turnaround work at the Valero Refinery in Texas City, Texas in September of 2007. Oatis was hired as a scaffolding carpenter at the pay rate of $16.00 per hour. Smith worked as a lead man for $18.00 per hour.

Smith testified that after he was hired, an A & L human resources employee informed him that other workers with the same certification as Smith were paid more than Smith. Smith approached A & L's human resources manager, Benjamin Gallegos, about the pay difference, but Gallegos confirmed that Smith's $18.00 per hour pay rate was appropriate. Smith testified that he continued to ask his supervisors about his pay rate after he spoke with other workers who were performing the same job but were paid more. He testified that after the daily safety meetings he would ask Ole Hernandez, the superintendent, David Ainsworth, an A & L supervisor at the Valero Refinery, and a man named "Byrd" about getting a raise. According to Smith, he was told that they would "get back" to him.

2

Smith testified that after he asked about the pay discrepancies, he and Oatis were sent to an "all-black crew." Smith explained that the crew consisted of every African-American employee at A & L who worked under one African-American foreman. Smith testified that, while working on this crew, he learned that all of the African-American workers were being paid the same lower rates as Oatis and Smith. Smith questioned his supervisors about the pay difference again, but this time he asked if the pay difference was "because [they] were black." The supervisors again told him that they would get back to him. Smith testified that this pattern of questions and answers continued daily for the three weeks that he worked for A & L at the Valero Refinery.

Oatis also testified at trial. According to Oatis, after he and Smith discovered that other workers were being paid more for doing the same job, they began to question Hernandez about the discrepancy. After he was moved to the all African-American crew, Oatis discovered that the African-American employees were paid less than other workers. According to Oatis, he and Smith continued to question Hernandez and Ainsworth about this. Oatis testified that during one of these discussions, Oatis "brought up the issue of our skin" and "nationality" to Ainsworth. According to Oatis, Ainsworth responded, "Oh, man. It's nothing like that. It's nothing like that."

3

According to Smith and Oatis, on the morning of the termination of their employment they had already told their usual foreman, Carl, that they needed to leave work early.[1]  Smith and Oatis testified that they were put on different crews that morning.  When the time came for them to leave, Smith and Oatis told the new foreman, Joe, that Carl had already given them the time off, and they began to leave.  When they reached an area known as the smoke pit, they were told to pack up their tools and go to the lunch tent.  At the lunch tent, Ainsworth informed them that they had been fired.  Smith testified that another employee, Byrd, drove Smith to pick up his tools.  While riding with Byrd, Smith heard someone say over the radio that he and Oatis were being fired for leaving a helper unattended.

Before Oatis and Smith left the plant, A & L safety technician Edgar Salinas gave Oatis and Smith each a document marked "Separation Notice."  Under "Action Taken," Salinas marked "Termination" on both forms.  Before signing his form, Smith demanded a reason for the termination.  Salinas wrote "leaving helper on site unattended" on both forms and gave each man a copy of his respective Separation Notice.

Smith testified the reason given for the termination was false because he did not leave a helper unattended.  Oatis also testified that he did not agree with the statement in the Separation Notice.  He signed it anyway because he believed

---

[1]     A foreman could oversee multiple crews.  On the morning of their termination, Oatis and Smith were working on separate crews.

4

refusing to sign it would be worse. Oatis and Smith testified that they did not return to work at A & L, and both testified that they had limited success in finding work on other turnaround jobs. They both filed complaints with the Equal Employment Opportunity Commission (EEOC).

Salinas, who completed the Separation Notices, testified that he made mistakes in doing so. He testified that after he completed the Separation Notices, he had Ainsworth sign them, and then realized that he had mistakenly checked the box marked "Termination," when he had intended to mark "Return to Hiring Office." Salinas admitted that he altered his copy of the Separation Notices to correct his mistake while he took Smith and Oatis to an office to return their badges. Salinas testified that he "used White-Out" to make the change and that he did not initial the change or get Ainsworth to sign the revised version of the Separation Notices. Salinas testified that he gave copies of the original and the corrected versions of the Separation Notices to Oatis and Smith and told them to return to the human resources office.

Gallegos testified about the hiring process. He explained that human resources was required to maintain an average hourly pay rate on each jobsite. Each position had a predetermined range of possible pay rates and an individual's pay was based on their experience and the goal of maintaining the average hourly pay rate at a certain level. Gallegos testified that for A & L to maintain the

5

average hourly pay rate, men with similar qualifications who were hired on different days might receive different pay.

Smith and Oatis's attorney questioned Gallegos about notes placed in their employment records. Smith's file contained a note that said: "Warning do not hire this person. Fails to follow procedures and safety. Disrespects supervisors. Ben G. March 5, 2009." A note in Oatis's file contained similar wording: "Terminated from Valero Texas City for leaving helper on site unattended. Company violations, 10-5-07. Warning. Do not rehire this person. Disrespects supervision, disregards for safety. Per Ben G. 3-5-09." Gallegos admitted that he made these notes and that Gallegos's receipt of right to sue letters is what "prompted" him to make them. A third note, which, according to Gallegos, may have applied to Oatis, Smith, or both, said: "[P]lease note he is not eligible for rehire ever. Tried to sue us. Simply tell him, 'sorry but we have nothing for you at this time. Please try again. Have a nice day.' Not for rehire. Per Ben G."

Ainsworth denied that Oatis or Smith ever asked him for a raise or asked about their pay. Ainsworth testified that on the last day of Oatis's and Smith's employment, one of his employees, Rafael, told him that "one of them" had left a helper unattended. Ainsworth admitted that in most circumstances even if one person walked away from a crew, the carpenter and two helpers would likely be left together. He also admitted that although both Separation Notices stated that

6

the reason for separation was leaving a helper unattended, only one of them did so (although he did not know whether it was Smith or Oatis), because they were on different crews that day. According to Ainsworth, he intended to send Smith and Oatis back to human resources to be placed elsewhere, and he asked Salinas to fill out the paperwork and send them to the human resources office. Ainsworth testified that he did not actually read the Separation Notices he signed and therefore was unable to recall what was written or checked on the forms.

The jury found that race was not a motivating factor in A & L's employment decisions regarding Smith's and Oatis's hourly pay. But it did find that A & L discharged or took other retaliatory actions against both Oatis and Smith because of their opposition to a discriminatory practice or filing of a charge of discrimination. The jury awarded Oatis $67,061.50 in back pay and $30,000 for past compensatory damages. It awarded Smith $68,215 in back pay and $30,000 for past compensatory damages. The jury also awarded Oatis and Smith $30,000 in exemplary damages each, based on its finding of malice. In addition, the trial court's judgment awarded Oatis and Smith $9,132 and $13,995, respectively, in front pay in lieu of reinstatement. A & L appealed.

## Sufficiency of the Evidence

In conducting a legal sufficiency review, we review the evidence presented below in a light most favorable to the jury's verdict, crediting favorable evidence if

reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We set aside the verdict only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient only if (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

In conducting a factual sufficiency review, we consider all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We cannot "substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion." *Glockzin v. Rhea*, 760 S.W.2d 665, 666 (Tex. App.—Houston [1st Dist.] 1988, writ ref'd).

Under either standard of review, we must be mindful that the jury as finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.

8

1986); *Raymond v. Rahme*, 78 S.W.3d 552, 556 (Tex. App.—Austin 2002, no pet.). The jury may choose to believe one witness and disbelieve another, and we must not impose our own opinion to the contrary. *City of Keller*, 168 S.W.3d at 819.

## A. Retaliation

In its first issue, A & L argues that the evidence is legally and factually insufficient to support the jury's finding that Oatis's and Smith's opposition to a discriminatory practice or filing a charge of discrimination was the cause of discharge or other retaliatory action.

Texas Labor Code Section 21.055 prohibits employers from retaliating against employees for engaging in protected activities such as opposing a discriminatory practice, making a charge, or filing a complaint. TEX. LAB. CODE ANN. § 21.055 (West 2006). To be protected under section 21.005, an employee is not required to show that an actual unlawful practice existed; rather the employee need only show that he had a good faith reasonable belief that the employer engaged in an activity that would be unlawful under Title VII or the Texas Commission on Human Rights Act. *See City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008).

To prevail on a claim under section 21.055, the plaintiff bears the burden to make a prima facie showing that: (1) he engaged in a protected activity, (2) an

9

adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse action. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 262 (Tex. App.—Dallas 2009, pet. denied). The employee must establish that absent his protected activity, the adverse employment action would not have occurred when it did. *See Gumpert*, 293 S.W.3d at 262; *McMillon v. Tex. Dep't of Ins.*, 963 S.W.2d 935, 940 (Tex. App.—Austin 1998, no pet.). The employee need not establish that the protected activity was the sole cause of the employment action. *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.). To prove that a challenged action constitutes an adverse employment action, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it could well have dissuaded a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006) (internal quotations omitted); *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.).

When an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action. *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 554 (Tex.

10

App.—Dallas 2006, no pet.). If the employer does so, the burden shifts back to the employee to show that the articulated reasons are pretextual. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 482 (Tex. 2001) (stating plaintiffs pursuing claims under TCHR must "show that discrimination was a motivating factor in an adverse employment decision").

Here, the charge submitted to the jury asked, in Question 3, "Did A & L Industrial Services, Inc. discharge or take other retaliatory action against Shedrick Oatis because of his opposition to a discriminatory practice or his filing a charge of discrimination or participating in any manner in a discriminatory proceeding?" Question 4 asked the same with respect to Smith. A & L did not object to broad form submission. *See Tex. Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 535–36 (Tex. 2012) (objection to single broad-form liability question is required to preserve error); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (when no objection is made to jury issue, sufficiency of the evidence is measured against charge given by court). Accordingly, if any of the submitted theories of liability is supported by legally and factually sufficient evidence, A & L's sufficiency challenge must be overruled. *See Harris Cnty. v. Smith*, 96 S.W.3d 230, 232 (Tex. 2002) (holding that where broad-form objection is not preserved, sufficiency challenge is limited to the verdict as a whole).

11

Here, the evidence at trial was sufficient to permit a rational jury to answer "yes" to Questions 3 and 4. With respect to the first element, engaging in protected activity, Oatis and Smith both testified that they discovered that African-American employees were paid less than employees of other races. They also testified that they repeatedly questioned various supervisors and Gallegos about the differences in pay and their belief that the differences were based on their race. Although Ainsworth, Hernandez, and Gallegos all denied that Smith and Oatis asked whether differences in pay were based on race, Oatis's and Smith's testimony was some evidence that they had opposed what they in good faith believed was a discriminatory practice of basing employee pay rates on race. *See Lopez*, 259 S.W.3d at 151 (holding that internal grievance alleging prohibited discriminatory conduct under the TCHRA was protected activity); *Tex. Dep't of Assistive and Rehabilitative Servs. v. Abraham*, No. 03-05-00003-CV, 2006 WL 191940, at *6 (Tex. App.—Austin 2006, no pet.) (holding an internal complaint of sexual harassment was protected activity under section 21.055(3)); *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 296 (Tex. App.—Corpus Christi 2000, pet. denied) (informal, internal complaint to supervisor regarding alleged harassing conduct prohibited by the TCHRA was a protected activity).

Likewise, there was sufficient evidence presented to permit a rational jury to determine that an adverse employment action occurred. Oatis's and Smith's last

day of work with A & L was October 5, 2007. Oatis and Smith contended their employment was terminated on that day. They introduced into evidence copies of their Separation Notices on which there was a check next to the box for "Termination." Salinas, who completed the Separation Notices, testified that he mistakenly checked the "Termination" box, then "used White-Out" to correct the error so that the form reflected "Return to Hiring Office," and gave copies of both versions to each of Smith and Oatis. Ainsworth testified he intended to send Smith and Oatis back to human resources to be placed elsewhere. But the jury was free to resolve the conflicting evidence in Oatis's and Smith's favor and conclude they suffered an adverse employment action—termination—on October 5, 2007. *See City of Keller*, 168 S.W.3d at 819.

There was also sufficient evidence of a causal link between Oatis's and Smith's complaints about pay and their termination on October 5, 2007. Both Oatis and Smith testified that they had inquired whether the discrepancies in pay were racially motivated. They both testified that they made these inquiries repeatedly during the three week period before October 5, 2007, and we conclude this is sufficient evidence to support the jury's causation finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996) (circumstantial evidence, and the reasonable inferences from such evidence, can prove causal link); *Menefee v. McCaw Cellular Comms. of Tex., Inc.*, No. 05-02-00142-CV,

13

2003 WL 1461469, at *7 (Tex. App.—Dallas Mar. 24, 2003, no pet.) (mem. op.) ("Close timing between an employee's protected activity and an adverse action against her may provide a sufficient causal connection necessary for a showing of retaliation.").

A & L argues that the jury's finding of retaliation is unsupported because A & L adduced evidence that Smith and Oatis were disciplined for their poor work ethic and policy violations, particularly leaving a helper unattended. A & L denies it terminated the employment of Oatis and Smith and urges that it was justified in asking them to leave the job site given their past performance. It contends that its evidence of their history of poor performance renders the jury's liability finding factually insufficient. But the jury was not required to accept A & L's contention that Oatis and Smith had a history of poor performance or that they were merely being sent away from the site (but not terminated) for leaving a helper unattended. Indeed, Oatis and Smith presented evidence to discredit these claims. A & L's policies required written warnings for discipline issues, but neither Oatis nor Smith received a written warning before October 5, 2007. And, although the Separation Notices state that they were disciplined for "leaving helper on site unattended," Ainsworth admitted that they were on different crews on the day they were fired and, at most, only one of them actually did so.

14

In sum, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence adduced at trial would enable reasonable and fair-minded people to conclude that there was a causal link between Oatis's and Smith's opposition to race-based pay rates and their termination, and is therefore legally sufficient. *City of Keller*, 168 S.W.3d at 827 (evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review). Having considered all of the evidence, we likewise conclude that the jury's liability finding is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176.

We overrule A & L's first issue.

## B. Damages

In its second issue, A & L contends that the evidence is factually insufficient to support the jury's damage awards.

The jury has discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for the jury's calculation. *Swank v. Sverdlin*, 121 S.W.3d 785, 799 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied). A jury's finding will not be disregarded merely because its reasoning in arriving at its figure may be unclear. *Pleasant v. Bradford*, 260 S.W.3d 546, 559 (Tex. App.—Austin 2008, pet. denied); *see also Mayberry*, 948

15

S.W.2d at 317 (applying same rationale in employment context). Where the evidence supports a range of potentially appropriate awards, Texas courts have found jury awards to be supported by factually sufficient evidence when they do not "differ greatly from either the top end of the range or the bottom end." *Mayberry*, 948 S.W.2d at 317; *cf. First State Bank v. Keilman*, 851 S.W.2d 914, 931 (Tex. App.—Austin 1993, writ denied) (holding damages amount arbitrary when number fell between both defendant and plaintiff's "relatively precise" methods for calculating unauthorized interest because finding lacked rational basis).

A & L contends that the evidence is factually insufficient to support both the jury's awards of back pay and the compensatory damage awards. We address each contention in turn.

### 1. Back Pay

Back pay compensates an employee for the amount of money he would have earned had the prohibited employment action not taken place, minus the amount he earned following the prohibited action. *See* TEX. LAB. CODE ANN. § 21.258(c) (West 2006); *West Telemarketing Corp. Outbound v. McClure*, 225 S.W.3d 658, 668 (Tex. App.—El Paso 2006, pet. granted, judgm't vacated w.r.m.).

Smith testified that he earned $20 to $21 per hour as a scaffold builder before working for A & L. According to Smith, he worked on average 60 hours

16

per week, 30 weeks per year. Smith testified that he worked 20 hours of overtime for which he was paid at time-and-a-half, each week. Based on these figures, he testified that he would have earned $132,000 during the three years following his termination from A & L. He subtracted $53,000 he had actually earned during the period to arrive at a total lost wages figure of $69,000.[2]

Oatis testified that prior to working at A & L he earned $18 per hour and worked about 30 weeks per year. Oatis, like Smith, testified that he worked 60 hours per week, 20 of which were paid at time-and-a-half. After subtracting his actual earnings from the previous three years, Oatis testified that he would have earned about $80,000 more in wages had he not been terminated from A & L.

A & L presented evidence that Smith and Oatis's lost wages figures were inflated because, in fact, there was very little turnaround work during the relevant three-year period following their termination. Both Gallegos and A & L Vice President Arvin Varghese testified that A & L's turnaround work had slowed in the years since Oatis and Smith left A & L. According to Varghese, although A & L performed 30 to 50 turnarounds in 2006 and 2007, they had been hired for only four in 2008 and two in 2009. Gallegos also testified that A & L had performed only a couple of turnarounds in 2007 and 2008. Smith countered this evidence by testifying that he would have been able to continue working as a scaffold builder

---

[2] The difference between $132,000 and $53,000 is $79,000.00, but Smith testified that the number was $69,000.

because there were still many turnaround jobs available at the time of trial, including though A & L.

On appeal, A & L argues there is factually insufficient evidence to support awards of lost wages higher than the amount that Oatis and Smith would have earned through the end of the 2007 Valero project for which they were hired. A & L offered a chart showing Oatis's and Smith's lost wages through the end of the Valero project. Based on a pay rate of $21 per hour for Smith and $18 for Oatis, Oatis's and Smith's lost wages, had they continued working for A & L until the Valero project was completed, would have totaled $7,061.50 and $8,992.50 respectively.

We hold that the back pay awards are supported by factually sufficient evidence. The jury was presented with many variables from which to reach its back pay determinations. The jury was free to believe Oatis's and Smith's testimony about their average rate of pay, and their average weeks and hours worked. *See City of Keller*, 168 S.W.3d at 819. The jury was not bound to accept A & L's contention that turnaround work evaporated after A & L completed the Valero project. The jury's back pay award of $67,061.50 for Oatis and $68,215.00 for Smith are within the range of evidence presented at trial. Accordingly, we overrule A & L's challenge to the back pay awards. *Mayberry*, 948 S.W.2d at 316–17 (damage award for lost wages that fell within range of evidence presented

18

at trial was supported by record); *SAS & Assocs., Inc. v. Home Mktg. Servicing, Inc.*, 168 S.W.3d 296, 303 (Tex. App.—Dallas 2005, pet. denied) (upholding jury's award of fraud damages within range of evidence presented at trial even though jury's basis for award amount was unclear).

## 2. Compensatory Damages

A & L argues that the evidence is factually insufficient to support the jury's compensatory damage awards of $30,000 to each of Smith and Oatis because there is factually insufficient evidence to support an award of mental anguish damages.

The Texas Supreme Court has held that when a broad-form damages question commingles valid and invalid elements of damages and an appellant's objection is timely and specific, the resulting error is harmful, and a new trial is required when an appellate court cannot determine whether the jury based its verdict on an improperly submitted, invalid element of damage. *Smith*, 96 S.W.3d at 234. A proper objection is one that "plainly inform[s] the court that a specific element of damages should not be included in a broad-form question because there is no evidence to support its submission." *Id.* at 236. When damages issues are submitted in broad-form, it is difficult, if not impossible, to determine the amount that the jury awarded for each element of damages. If a party does not ask for separate damage findings, it can challenge only the sufficiency of the evidence supporting the entire award of damages. *See City of Houston v. Levingston*, 221

19

S.W.3d 204, 230 (Tex. App.—[1st Dist.] 2006, no pet.) (citing *Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995)). To challenge a multi-element damage award on appeal successfully, a party must address all of the elements of damages and show that the evidence is insufficient to support the entire damage award. *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 885 (Tex. App.—Dallas 2003, no pet.); *Norfolk S. Ry. Co. v. Bailey*, 92 S.W.3d 577, 583–84 (Tex. App.—Austin 2002, no pet.). Failure to do so results in a waiver of the sufficiency challenge. *Tex. Youth Comm'n v. Koustoubardis*, 378 S.W.3d 497, 501–02 (Tex. App.—Dallas 2012, no pet.); *Levingston*, 221 S.W.3d at 230.

Here, the jury was asked, with respect to each plaintiff, "What sum of money, if any, if paid now in cash . . . would be a fair and reasonable compensation" for "compensatory damages in the past, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses?" A & L made no objection. Accordingly, its challenge on appeal is limited to the sufficiency of the evidence supporting the entire award of compensatory damages. *See Koustoubardis*, 378 S.W.3d at 502; *Levingston*, 221 S.W.3d at 230.

A & L argues only that the compensatory damages award is unsupported because there is factually insufficient evidence to support an award of mental anguish damages. A & L does not challenge the sufficiency of the evidence with

20

respect to the other elements submitted in the same question: "emotional pain and suffering, inconvenience, loss of enjoyment of life, or other noneconomic loss." Accordingly, we hold that A & L has waived appellate review of its sufficiency challenge to compensatory damages. *See Koustoubardis*, 378 S.W.3d at 502 (appellant that challenged sufficiency of evidence to support mental anguish damages, but did not challenge sufficiency of evidence to support damages for emotional pain and suffering, inconvenience, loss of enjoyment of life, or other noneconomic loss waived sufficiency challenge where compensatory damages question was submitted in broad form); *Levingston*, 221 S.W.3d at 230 (appellant that failed to object to broad-form damages submission waived appellate complaint as to compensatory damages when it failed to argue insufficiency of evidence as to all compensatory damage grounds).

We overrule A & L's second issue.

## C. Malice

In its third issue, A & L argues that the evidence is legally and factually insufficient to support the jury's finding by clear and convincing evidence that the harm to Oatis and Smith was a result of malice.

The jury was asked in Question 7, "Do you find by clear and convincing evidence that the harm to Shedrick Oatis resulted from malice?" The jury was asked the same about Smith in Question 8. In the absence of an objection, we

21

measure the sufficiency of the evidence against the charge given. *See Osterberg*, 12 S.W.3d at 55. The charge defined malice as "a specific intent by A & L Industrial Services, Inc. to cause substantial injury or harm" and defined clear and convincing evidence to be the "measure or degree of proof that produces a firm belief or conviction of the truth of the allegation sought to establish."

Evidence of a retaliatory action alone is not sufficient to show malice. *See Ancira Enters., Inc. v. Fisher*, 178 S.W.3d 82, 94 (Tex. App.—Austin 2005, no pet.) (citing *Cont'l Coffee*, 937 S.W.2d at 454). If evidence of retaliatory action alone were sufficient for a jury to find malice, malice would be present in every case in which retaliatory discharge was established. *See id.* However, knowledge of laws that prohibit retaliation on the part of an employer who has committed a retaliatory action has been found to be some evidence to support exemplary damages. *See id.* at 94–95. In addition, "[c]ourts have also recognized malice where an employer engages in harassment in connection with a wrongful firing." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 663 (Tex. 2012); *see Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 779 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (forcing an employee to sign a false confession upon termination was evidence of malice).

Gallegos, A & L's human resources manager, testified that he was aware that if an employee opposes a discriminatory practice and is fired as a result, the

22

employee has a potential retaliation claim. Gallegos also admitted that he made notes in Oatis's and Smith's employment records that they were ineligible for rehire. He acknowledged that his receipt of notices that Oatis and Smith filed EEOC claims against A & L is what prompted him to make the notes. He also acknowledged that retaliating against an employee for filing a charge of discrimination was legally impermissible.

Salinas testified that he wrote "leaving a helper unattended" on each of the Separation Notices, after Smith asked why he and Oatis were being fired. However, Ainsworth, the A & L supervisor that signed the Notices, admitted only one of them left a helper unattended—although he could not identify whether it was Smith or Oatis—because they were on different crews that day. Oatis and Smith both denied leaving a helper unattended.

A & L relies on its claim that Oatis and Smith were asked to leave the job site for "repeated violations of established rules," and that its actions were "manifestly justified" by Oatis's and Smith's "misconduct, insubordination and violation of company rules." However, Gallegos testified that A & L's policy was to provide written warnings to employees who were committing misconduct, and it is undisputed that no written warnings were provided to Oatis and Smith prior to their termination. Further, although Gallegos placed notes in the employment files of Oatis and Smith, indicating that they "fail[ed] to follow procedures and safety,"

23

"[d]isrespect[ed] supervisors," committed "[c]ompany violations," and "[d]isregard[ed] . . . safety," he testified that the basis for these notes was his receipt of notice that Oatis and Smith had filed complaints with the EEOC. Further, Gallegos indicated in another note in the files that the basis for refusing to rehire was not work misconduct, but because they "[t]ried to sue us."

We hold that this evidence is sufficient to support a firm belief or conviction that A & L terminated Oatis and Smith because they opposed a discriminatory practice, knowing that its actions were against the law, and forced Oatis and Smith to sign the Separation Notices, when at most one of them engaged in the misconduct for which they were both terminated. *See Ancira*, 178 S.W.3d at 94 (evidence that human resources director was knowledgeable of anti-discrimination policy was sufficient to show malice and support finding of exemplary damages); *Tesmec USA, Inc. v. Whittington*, 10-04-00301-CV, 2006 WL 827849, at *7 (Tex. App.—Waco Jan. 18, 2006, pet. denied) (mem. op.) (evidence sufficient to support malice finding where evidence showed retaliatory action taken after employee filed workers' compensation claim and employers admitted they were aware it was against law to discriminate or retaliate against employee for filing a claim); *Tijerina*, 979 S.W.2d at 779 (forcing an employee to sign a false confession upon termination was evidence of malice). Accordingly, we conclude that this evidence is legally sufficient to support the jury's finding that A & L acted with malice.

24

*City of Keller*, 168 S.W.3d at 827. Having considered all of the evidence, we likewise conclude that a finding that A & L acted with malice is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176.

We overrule A & L's third issue.

## Spoliation Instruction

In its fourth issue, A & L contends that the trial court abused its discretion by including two spoliation instructions in the charge. Oatis and Smith filed a pretrial motion requesting spoliation instructions and sanctions, contending that A & L spoliated evidence by (1) altering the original Separation Notices with white-out so that they would reflect that Oatis and Smith were told to return to the hiring office rather than terminated, and failing to retain the original Notices, and (2) failing to preserve the scratch pads on which Gallegos jotted notes at work.

The trial court held a hearing on the motion on September 13, 2010. At the conclusion of the hearing, the trial court granted Oatis's and Smith's request for two spoliation instructions, one for the Separation Notices and one for Gallegos's scratch pads. The trial court stated that it would include the instructions proposed and signed an order to that effect.

On November 8, 2010, A & L submitted proposed revised versions of the spoliation instructions. A & L did not indicate that they were submitted subject to

25

any objections. At the charge conference on November 15, 2010, A & L requested that specific words in the spoliation instructions be changed in keeping with its proposed revised instructions. It requested that a reference in one of the spoliation instructions to "termination paperwork" be changed to "Separation Notice." It also requested that the trial court remove the language instructing the jury that Gallegos's journals "would have shown that Plaintiffs were terminated on October 5, 2007," and that they "had lodged complaints about their pay rate from A & L Services, Inc." But A & L never objected to the submission of the instructions at the charge conference. In fact, at the end of the conference, the court gave both parties a copy of the court's proposed charge. The court asked A & L whether it had any objection to the charge, to which A & L responded, "No objection."

In its motion for new trial and on appeal, A & L asserts that the trial court erred in submitting the spoliation instructions to the jury. In its motion for new trial, A & L contended that "[t]he objections to these instructions were made and preserved." It contends it preserved the error by filing a written response to the pretrial motion requesting spoliation instructions and objecting during the pretrial hearing on the motion.

In order to preserve error on appeal, a party must timely object to the jury charge, plainly make the trial court aware of the nature of the complaint, and

obtain a ruling. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007); *see* TEX. R. CIV. P. 272. Failure to object before the charge is read to the jury waives the complaint. TEX. R. CIV. P. 272; *Roberson v. Collins*, 221 S.W.3d 239, 243 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *F.S. New Prods., Inc. v. Strong Indus. Inc.*, 129 S.W.3d 606, 624 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (op. on reh'g)). An affirmative statement of no objection to the charge also waives the complaint. *Wackenhut Corp. v. Gutierrez*, 358 S.W.3d 722, 725 (Tex. App.—San Antonio 2011, pet. filed).

The San Antonio Court of Appeals found waiver on similar facts in *Wackenhut Corp. v. Gutierrez*, 358 S.W.3d 722 (Tex. App.—San Antonio 2011, pet. filed). There, the plaintiff filed a pretrial motion requesting a spoliation instruction. *Id.* at 723. The defendant filed a response, arguing that there was no evidence of spoliation to support such an instruction, and requesting a limine instruction excluding any reference to the alleged spoliation at trial. *Id.* at 723–24. The trial court did not rule on the request for the spoliation instruction until after the plaintiff rested his case, at which point the trial court granted the request. *Id.* at 724. The defendant did not object to the ruling. *Id.* Later, at the conclusion of the charge conference, the defendant affirmatively stated that there was no objection to the jury charge, which included a spoliation instruction. *Id.* Then, after the charge was read to the jury, the defendant requested a bench conference and told the trial

27

judge "We are objecting to the submission of the spoliation instruction." *Id.* The San Antonio Court of Appeals held that even though the defendant complained about the inclusion of the instruction in its motion for new trial, the defendant waived its right to appeal the court's inclusion of the instruction because the defendant's objection at trial was not specific and timely and the defendant had stated that there was no objection to the charge. *Id.* at 725.

Similarly, we conclude that A & L failed to preserve this issue for review. TEX. R. APP. P. 33.1(a).

We overrule A & L's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

28